UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| JASPAL SINGH HARE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 2:22-CV-00189 |
| | § | |
| SANJAY PANT, | § | DEMAND FOR JURY TRIAL |
| | § | |
| Defendant. | § | |

## **DEFENDANT'S MOTION TO DISMISS**

## **TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................... 1

II.   FACTUAL BACKGROUND .............................................................................. 2

   A.   Plaintiff Jaspal Hare, Esq. ....................................................................... 2

   B.   Plaintiff's factual allegations. ................................................................. 3

   C.   Hare acted only through the Law Firm that terminated him ............................. 4

   D.   Defendant Pant is not the Client or a party to any alleged agreement. ............. 7

III.   STATEMENT OF ISSUES ............................................................................... 8

IV.   LEGAL STANDARD ........................................................................................ 8

V.   ARGUMENT ..................................................................................................... 9

   A.   Hare cannot state a claim for breach of contract. .................................... 9

   B.   Hare cannot allege fraud .......................................................................... 11

   C.   Hare cannot allege intentional interference with existing contract ................. 12

   D.   Hare cannot allege wrongful interference with prospective contractual or business relations ............................................................................................. 14

   E.   Hare has no standing to assert the forgoing claims .......................... 15

   F.   There is no legally-cognizable conspiracy ........................................... 16

VI.   CONCLUSION ................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v Iqbal*, 556 U.S. 662 (2009) .................................................................... 8

*Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347 (5th Cir. 2003) ........................ 10

*Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909 (Tex. 2013) ................... 15

*Copeland v. Merrill Lynch & Co., Inc.*, 47 F.3d 1415 (5th Cir. 1995)................................. 10

*El Paso Healthcare Sys., Ltd. v. Murphy*, 518 S.W.3d 412 (Tex. 2017) .............................. 13

*Foreca, S.A. v. GRD Dev. Co.*, 758 S.W.2d 744 (Tex. 1988).............................................. 10

*Ghedi v. Mayorkas*, 16 F.4th 456 (5th Cir. 2021)................................................................ 15

*Hoffman v. L & M Arts*, 838 F.3d 568 (5th Cir. 2016)........................................................ 11

*Holloway v. Skinner*, 898 S.W.2d 793 (Tex. 1995) ............................................................. 13

*Homoki v. Conversion Servs., Inc.*, 717 F.3d 388 (5th Cir. 2013)......................................... 16

*In re Isbell Recs., Inc.*, 586 F.3d 334 (5th Cir. 2009).............................................................. 5

*Kay v. Ehrler*, 499 U.S. 432 (1991) ..................................................................................... 2

*Leasehold Expense Recovery, Inc. v. Mothers Work, Inc.*, 331 F.3d 452 (5th Cir. 2003)........ 16

*Liberto v. D.F. Stauffer Biscuit Co.*, 441 F.3d 318 (5th Cir. 2006)....................................... 10

*Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634 (5th Cir. 2007) ........................................ 16

*N. Texas Opportunity Fund L.P. v. Hammerman & Gainer Int'l, Inc.*, 107 F. Supp. 3d 620
   (N.D. Tex. 2015) ............................................................................................................ 13

*Nursery Decals and More, Inc. v. Neat Print, Inc.*, 568 F. Supp. 3d 681 (N.D. Tex. 2021). 13

*PharMerica Corp. v. Advanced HCS LLC*, No. 2:17-cv-180-JRG, 2017 WL 7732174
   (E.D. Tex. July 13, 2017)................................................................................................ 16

*Santander Consumer USA, Inc. v. Zeigler Chrysler Dodge Jeep Downers Grove, LLC*, No. 3:16-CV-3310-B, 2017 WL 2729998 (N.D. Tex. June 26, 2017) ........................................ 14

*Sawyer v. E.I.DuPont De Nemours & Co.*, 689 F.3d 463 (5th Cir. 2012) ........................... 13

*T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218 (Tex. 1992) ............................ 10

*Unicorn Global, Inc. v. GoLabs, Inc.*, 447 F. Supp. 3d 535 (N.D. Tex. 2020) ................... 14

*USAA Texas Lloyds Company v. Menchaca*, 545 S.W.3d 479 (Tex. 2018) ........................ 10

*WickFire, L.L.C. v. Laura Woodruff*, 989 F.3d 343 (5th Cir. 2021), as revised (Mar. 2, 2021) ............................................................................................................................. 13

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................................... 8

Local Rule AT-2 ............................................................................................................ 12

Tex. Disp. Rules Prof. Conduct 1.02, cmt. 4 ......................................................... 6, 12

## I.   <u>INTRODUCTION</u>

Plaintiff Jaspal Hare, Esq. contends he had an irrevocable right to be lead counsel and is thus entitled to millions of dollars in both hourly and contingency fees. But Mr. Hare was terminated by his former law firm—a documented fact that will be proven if this case survives this Motion.[1] Because Plaintiff failed to assert facts, non-conclusory allegations, or even an injury on which actionable claims may be sustained, however, this case should be dismissed.

 Substituting sleight-of-hand for substance, Mr. Hare's claims depend on excerpts from agreements between his former employer and that firm's former client, in which Mr. Hare overwrites his name in place of the "Law Firm."  When the cited portions of the "agreements" are subjected to scrutiny, however, they show: (1) Mr. Hare cannot plead he was party to any underlying agreement; (2) Mr. Hare cannot plead that Defendant Sanjay Pant was a party to any agreement; (3) Mr. Hare cannot rely upon representations contrary to the agreements or law; and (4) Mr. Hare cannot plead rights with which anyone could interfere.

Because he is not a party to any of those agreements, Mr. Hare invents a contract claim based upon a summary email. But even a cursory review of the email reveals that Mr. Pant was recounting the position of the Client.[2] Even if that were not

---

[1] Even without that proof, the Court oversaw the underlying litigation and has judicial notice regarding Mr. Hare's limited substantive involvement and subsequent withdrawal.

[2] Capitalized terms not defined herein mirror those used by Mr. Hare in his Complaint.

1

the case, the email cannot be a contract as a matter of law for not evidencing an agreement (it twice states "no commitment") and for omitting material terms.

These pleading defects not only fail to state a claim upon which relief could be granted, they show a lack of standing. The undisclosed "Law Firm" has any rights regarding contracts it signed, not Mr. Hare. The "Client," not Mr. Pant, had any rights and obligations regarding the Engagement Letter and termination of the Law Firm, as is required by ethical rules. And, again, Mr. Hare fails to allege (because he cannot) that Mr. Pant is a party to *any* of those agreements.

Mr. Hare's claims thus fail at least twice. As a self-represented lawyer "with over a decade in experience," Mr. Hare should know better than to impose upon the Court with such claims. Indeed, "[t]he adage that 'a lawyer who represents himself has a fool for a client' is the product of years of experience by seasoned litigators," and countermands Plaintiff's self-aggrandization in his Complaint. *Kay v. Ehrler*, 499 U.S. 432, 437-38 (1991). Dismissal, with prejudice, is appropriate.

## II.  <u>FACTUAL BACKGROUND</u>

### A. **Plaintiff Jaspal Hare, Esq.**

Plaintiff claims to be "a licensed attorney specializing in patent litigation with over a decade of experience," who "spent four years in New York City working for the law firm of Cadwalader, Wickersham and Taft." Compl. ¶¶ 2, 8. Mr. Hare touts his purported ability to properly "vet" patents, to "review" patent cases, and to prepare a "detailed strategy memorandum" prior to engagement by the client. *Id.* ¶¶ 8,

2

10, 13, 16. He does not claim to be an expert trial lawyer, however, and while he lauds a *Markman* ruling in the underlying litigation as his success (*id.* ¶ 21), Mr. Hare also admits that it was necessary to bring in "***co-lead-counsel***" from "a short list of elite attorneys" (*id.* ¶¶ 23, 24 (emphasis in original)), one of which took "over the day-to-day activities for the district court litigation" (*id.* ¶ 26). Mr. Hare later complains that "co-lead counsel" was allowed to "*call all the shots*" at the *Markman* hearing and thus admits even that success was his co-counsel's.  *Id.* ¶ 32 (emphasis in original).

## B. Plaintiff's factual allegations.

Mr. Hare asserts claims for breach of contract, fraud, intentional interference with existing contract, wrongful interference with prospective contractual or business relations, and conspiracy, arising out of four documents that are omitted from the Complaint:

> (1) the "Funding Agreement." *Id.* ¶ 14;
>
> (2) the "Engagement Letter." *Id.* ¶ 16;
>
> (3) the "7/13 Budget." *Id.* ¶ 27; and
>
> (4) the "Amended Funding Agreement." *Id.* ¶¶ 25, 25 n. 14.

Of paramount importance, Mr. Hare never alleges any of these agreements were executed by him or Mr. Pant in either's respective personal capacity. To the contrary,

3

Plaintiff admits that the parties to these agreements are Client, Mr. Hare's former law firm,[3] Co-Counsel, and/or Funder. Specifically:

> (1) "The Client agreed to … the Funding Agreement." *Id.* ¶¶ 14-15;
>
> (2) "The Client also formally retained Mr. Singh Hare ***through the law firm*** for which he worked." *Id.* ¶ 16 (emphasis added);
>
> (3) Regarding the 7/13 Budget, "Mr. Pant … acted as liaison between Co-Counsel and the existing team." *Id.* ¶ 27.
>
> (4) Client, Co-Counsel, and Funder executed the Amended Funding Agreement, and "[n]o changes were made to Mr. Singh Hare's Engagement Letter," which thus continued to be "through the law firm." *Id.* ¶¶ 25, 16.

Any agreement or engagement between Client, Law Firm, Co-Counsel, and/or Funder were between parties independent and separate from Mr. Pant and Mr. Hare, and Mr. Hare does not allege anything substantive to the contrary.

## C. Hare acted only through the Law Firm that terminated him.

Plaintiff's failure to provide the underlying agreements to the Court is telling, as is his admission that he was engaged through his former law firm. Hare further admits that there was a termination clause in the Engagement Letter, covering termination with, and without, cause.  *Id.* ¶ 17. And the quoted clause makes clear, again, that the

---

[3] The single-member law firm, Singh Hare PLLC, that Hare used to file this lawsuit was not in existence at the time of the events alleged in the Complaint.  It was formed on October 6, 2021, after Hare was fired by the law firm mentioned in the Complaint.  No reference in the Complaint to a "firm" or "law firm" or an "engagement letter" can be referring to Singh Hare PLLC, and Plaintiff makes no direct attempt to do so.

parties to the Engagement Letter are "the Client" and "the Firm" ("If the Firm terminates"; "You agree the Firm"; "If the Firm"; "our legal fees")—*not* Mr. Hare. *Id.*

Plaintiff's subsequent attempts to contradict these admissions are unsuccessful. Even Mr. Hare's selective quotes make clear he was not a party to any relevant agreement. Regarding the Funding Agreement, the contractual parties are the "Claimant" (the Client), the "Lead Law Firm" (Hare's former firm), and the Funder:

> 14.   The Client agreed to the terms.  On November 19, 2019, the term sheet was fully executed.  The deal closed around June of 2020 with the signing of a formal funding agreement (the "Funding Agreement").  The Funding Agreement states (emphasis added):
>
> *Name of Lead Attorney: Jaspal S. Hare.*
>
> *       *       *
>
> Lead Law Firm has agreed with Claimant [(the Client)] that it, in comporting with the applicable rules of professional conduct, will use all commercially reasonable efforts to (i) *zealously represent Claimant in Claimant's pursuit of the Litigation and reasonable monetization of the Litigation through settlement or final judgment*; (ii) in good faith to maintain its representation of Claimant and its Engagement Agreement; and (iii) to not act to circumvent the economic terms of this Agreement.

*Id.* ¶ 14 (highlighting added).  That Hare was designated "Lead Attorney" does not make him "Lead Law Firm," lest one of those definitions be construed to have no meaning in contravention of Texas law.[4]

Mr. Hare then claims he was a party to a budget contract and again edits the quoted language to insert his name in brackets for that of the Law Firm.  Mr. Hare

---

[4] "A contract should be interpreted as to give meaning to all of its terms—presuming that every provision was intended to accomplish some purpose, and that none are deemed superfluous." *In re Isbell Recs., Inc.*, 586 F.3d 334, 337 (5th Cir. 2009) (internal citations and modifications omitted").

expects the Court to believe that, with his alteration, the "7/13 Budget" provided for $1.2+ million in discounted fees *solely* for Mr. Hare in the remaining six months before trial. Assuming Mr. Hare billed 200 hours a month, during the winter holiday season, even before a purported 10% contingency fee kicker, his *discounted* hourly rate would be $1,000/hr.[5] Complaint ¶ 27. Such a "discounted" fee, with a contingent interest, begs credulity. When considering Mr. Hare's various modifications to the agreements—including neglecting to modify the quoted language to remove the article "the"—Mr. Hare's strategy to mislead the Court regarding his, versus his former firm's, rights is rendered plain. *Id.* ¶ 35 ("the [Mr. Singh Hare] has the authority to…").

Finally, despite quoting the termination clause in the Engagement Letter, it appears Hare is claiming that once "he" was hired, he could never be dismissed. *Id.* ¶ 42 (alleging "a contract exists where Mr. Pant agreed to use Mr. Singh Hare's services if the Funder was used."). Mr. Hare never explains or alleges why Mr. Pant purportedly had any right to permanently bind Client to a representation agreement in violation of Mr. Hare's ethical duties. TEX. DISP. RULES PROF. CONDUCT 1.02, cmt. 4 ("the client may not be asked … to surrender the right to terminate the lawyer's services"). If such a contract existed (it does not), it would be void.

---

[5] "That budget included a line item with $1.2+ million in discounted hourly fees." *Id.* ¶ 27.

The reason a client retains the right to fire its counsel is plain, but even more apparent under the facts before the Court. In the event this lawsuit passes the pleading stage, Defendant will present evidence that the Law Firm fired Hare for unethical behavior, namely a demand from Hare to his former firm's accounting department for an unauthorized six-figure payment.

### D. Defendant Pant is not the Client or a party to any alleged agreement.

Mr. Hare's subterfuge is not limited to his attempts to equate himself to his former Law Firm; he continues by attempting to conflate Mr. Pant with the Client or Mr. Pant's entity principal.  Indeed, as discussed above, Mr. Hare does not allege that Mr. Pant was a party to the Funding Agreement, Engagement Letter, 7/13 Budget, or Amended Funding Agreement.

Moreover, Mr. Hare's allegations conflating Mr. Pant with his principal are self-defeating. Mr. Hare admits Mr. Pant is a managing member of IP Edge LLC. *Id.* ¶ 9. Mr. Hare further concedes that Mr. Pant's involvement in the underlying facts resulted from the representation of "the Client as a patent broker and/or licensing agent ***through IP Edge***." *Id.* ¶ 11 (emphasis added). But Mr. Hare does not allege that Mr. Pant or his entity were a party to any agreement, because Mr. Pant did not act individually or sign a contract in his individual capacity. Mr. Hare thus effectively

admits he has no claims against Mr. Pant because all of Defendant's actions were on behalf of his principal.[6]

### III.   STATEMENT OF ISSUES

(1) Whether Plaintiff failed to state a claim; and

(2) Whether Plaintiff has standing to assert his claims.

### IV.   LEGAL STANDARD

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief may be granted." *See* Fed. R. Civ. P. 12(b)(6).   A valid Complaint "must contain sufficient factual material, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations marks omitted).   Plausibility requires the plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.   *Id.* (internal quotations marks omitted). This test requires more than a "sheer possibility"; a complaint that alleges facts that are merely consistent with a defendant's liability "falls short" of pleading a valid lawsuit.   *Id.*

---

[6] To be abundantly clear, IP Edge is not a party to the aforementioned agreements either and a claim against it would fail for the same reasons as the claims alleged by Mr. Hare here.

# V.   <u>ARGUMENT</u>

## A. **Hare cannot state a claim for breach of contract.**

The only alleged contract that Mr. Pant is accused of breaching is contained in Exhibit 1 to the Complaint.[7]  That email from Mr. Pant (spant@ip-edge.com) to Hare (address omitted) states in relevant part:

> I just spoke with [redacted].  I explained to him that you are willing to work up the case to present to your funder buddy, with **no commitment or obligation to use your firm as litigation counsel** and your funder buddy as funder.  However, if we did use your funder buddy to fund litigation, as a result of your efforts, then we would agree to use **your firm** as litigation counsel, assuming your firm+funder rates made sense. **However there is no commitment to use your funder or your firm.**

Complaint, Ex. 1 (Dkt. 1-2) (emphasis added).

This is email is simply not a contract and cannot be breached.[8]  It is at most a summary of a conversation with the Client ([redacted]) regarding a potential future agreement without any material terms.  Notably, the email includes: (1) "no commitment or obligation to use your firm as litigation counsel"; (2) open material terms ("firm+funder rates"); and (3) "no commitment to use your funder or your firm."  This email does not evidence a "meeting of the minds" that resulted in an enforceable contract.  *USAA Texas Lloyds Company v. Menchaca*, 545 S.W.3d 479, 501

---

[7] Hare does not allege breach of the Engagement Agreement, Funding Agreement, Amended Funding Agreement, or 7/13 Budget, which is a tacit admission that neither he nor Pant are parties to those agreements.

[8] Defendant denies that this email is a contract, that Mr. Pant had any authority to bind the Client, or that this email constitutes anything other than a summary of a conversation, which will be proven if necessary upon a motion for summary judgment.

n.21 (Tex. 2018) (a valid contract requires "the parties had a meeting of the minds on the essential terms of the contract (mutual assent)"). There is no intent to be bound, as required by law. *Foreca, S.A. v. GRD Dev. Co.*, 758 S.W.2d 744, 746 (Tex. 1988).

Moreover, "agreements to agree, particularly absent material terms … are unenforceable under Texas law." *Copeland v. Merrill Lynch & Co., Inc.*, 47 F.3d 1415, 1425 (5th Cir. 1995). Where an "essential term is open for future negotiations, there is no binding contract." *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992); *see also Liberto v. D.F. Stauffer Biscuit Co.*, 441 F.3d 318, 323 (5th Cir. 2006). Exhibit 1 has none of these essential elements: (1) it includes "no commitment or obligation"; (2) it is preconditioned upon "us[ing] your funder buddy"; (3) it is conditioned upon open, material terms, including "firm+funder rates"; and (4) again, reiterates "no commitment to use your funder or your firm."

On top of that, the email was not even an agreement to discuss the possible employment of Hare ***personally***. It specifically mentions "your firm," referring to Hare's former law firm, at which he was "of counsel." Hare does not allege he is a third-party beneficiary of that contract and, even if he did, "the intent to make someone a third-party beneficiary" is **not** "clearly written or evidenced in the contract" as required. *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 356, 362 (5th Cir. 2003). Accordingly, Hare can show none of: (1) the existence of a contract; (2) to which he was a party or had third-party rights; (3) that was breached; or (4) caused him injury.

10

**B. Hare cannot allege fraud.**

Mr. Hare describes only two representations for which he claims he was defrauded: (1) regarding the "7/13 Budget"; and (2) that Hare "would be co-lead counsel." Compl. ¶¶ 47(a), 47(b).

First, Hare asserts that Mr. Pant defrauded him by transmitting a "budget" that allegedly included line items for work to be done by what is now Hare's former firm. *Id.* ¶ 47.  Hare cannot allege that he relied upon such "representations" in a budget, which is not a statement of present fact. A budget is a prediction. A "prediction, or statement about the future, is essentially an expression of opinion" and "future predictions are generally not actionable." *Hoffman v. L & M Arts*, 838 F.3d 568, 579 (5th Cir. 2016).

Even if a "budget" constitutes a representation, Hare does not allege he was a signatory or a direct beneficiary in his own right to the "budget" that was allegedly proposed for the Amended Funding Agreement. If a representation at all, the budget was not a representation to Mr. Hare, but rather to the Law Firm. And if such a representation was false, Mr. Hare was not damaged; the Law Firm was. Mr. Hare further cannot allege reliance as the Engagement Agreement includes a termination provision. Mr. Hare cannot even allege that the representation was false; because he was terminated, he has no idea what was billed by the Law Firm to the Client.

Second, Hare claims fraud in the alleged misrepresentation that Hare would be "co-lead counsel" with the ability to manage the case. Hare does not allege Pant had

authority to retain Hare as "co-lead counsel with express authority to manage and coordinate the matters."  Pant was not the Client and was not a party to the Engagement Letter, Funding Agreement, or Amended Funding Agreement, a fact of which Hare is aware. Hare cannot show he relied on any statement by Pant regarding Client's choice of counsel, because Hare knew Pant was not a party and had no binding authority over any party to the Engagement Letter, Funding Agreement, or Amended Funding Agreement.

Further, Hare could not have relied upon such a representation because, as a lawyer, he is presumed to know the ethical rules. Indeed, as an attorney who filed in this District, Mr. Hare "should be familiar with the duties and obligations imposed upon members of this bar by the Texas Disciplinary Rules of Professional Conduct." L.R. AT-2.  Accordingly, Mr. Hare knows that "the client may not be asked … to surrender the right to terminate the lawyer's services." TEX. DISP. RULES PROF. CONDUCT 1.02, cmt. 4. Designation of counsel is the sole province of the client to whom Hare was necessarily subservient, and Hare could not have relied upon any statement contrary to the ethical rules or the provisions of the Engagement Agreement.

## C. Hare cannot allege intentional interference with existing contract

Hare complains that there are three contracts with which Mr. Pant intentionally interfered: (1) an engagement letter between Hare's former Law Firm and the Client; (2) the Funding Agreement between the Client, Hare's former Law Firm, and the

12

Funder; and (3) an employment contract between Hare and his former Law Firm.
Compl. ¶ 53.

"In Texas, 'a **_party_** to a contract has a cause of action for tortious interference….'" *N. Texas Opportunity Fund L.P. v. Hammerman & Gainer Int'l, Inc.*, 107 F. Supp. 3d 620, 635 (N.D. Tex. 2015) (emphasis added) (quoting *Holloway v. Skinner*, 898 S.W.2d 793, 794–95 (Tex. 1995)). As discussed in detail above, Mr. Hare is **_not a party_** to the Engagement Agreement or Funding Agreement and cannot sustain this claim. And because Mr. Hare is not a party to either of these contracts, he cannot allege the essential element of damages. *WickFire, L.L.C. v. Laura Woodruff*, 989 F.3d 343, 353 (5th Cir. 2021), as revised (Mar. 2, 2021).

The only contract in which Hare had a direct interest was his alleged employment agreement with his former Law Firm. Mr. Hare, however, has not alleged any materials terms regarding that contract, including but not limited to the term of that contract and whether it was terminable at-will or for cause. Without such an allegation, "[e]mployment in Texas is presumed to be at will." *Sawyer v. E.I.DuPont De Nemours & Co.*, 689 F.3d 463, 467 (5th Cir. 2012). "And an at-will employee may be discharged for good cause, bad cause, or no cause at all." *Id.* (internal citations omitted). Mr. Hare cannot allege that Mr. Pant tortiously interfered with an at-will relationship. *Nursery Decals and More, Inc. v. Neat Print, Inc.*, 568 F. Supp. 3d 681, 704 (N.D. Tex. 2021) (citing *El Paso Healthcare Sys., Ltd. v. Murphy*, 518 S.W.3d 412, 421 (Tex. 2017)); *Unicorn Global, Inc. v. GoLabs, Inc.*, 447 F. Supp. 3d 535, 547 (N.D. Tex.

2020) (third-party's decision to cease to sell plaintiff's product, where contract was at-will, "is not sufficient to establish tortious interference with contract.").

In sum, Hare has failed to plead that he is a party to any contract other than his employment agreement, and he fails to allege material facts regarding that. He fails to allege concrete harm. Hare's "contract" with his former firm was terminated by that firm based on malfeasance. Hare's prolix Complaint does nothing to absolve him from that firing.

### D. Hare cannot allege wrongful interference with prospective contractual or business relations

Hare alleges that Mr. Pant wrongfully interfered regarding a business relationship "with respect to a [sic] another patent controlled by the Client." Compl. ¶ 61. But Hare does not allege a "reasonable possibility" or likelihood that a future contract would have arisen between himself and the Client; indeed, he admits the patent is "controlled" by another. *See Santander Consumer USA, Inc. v. Zeigler Chrysler Dodge Jeep Downers Grove, LLC*, No. 3:16-CV-3310-B, 2017 WL 2729998 at *9 (N.D. Tex. June 26, 2017) ("To establish tortious interference with prospective contract, one must first show more than speculation or the bare possibility that the plaintiff would have entered into a future business relationship."). "Mere negotiations [regarding future contracts] are not enough." *Id.*

To the contrary, Hare eliminated any reasonable possibility of prospective contract by his termination from the Law Firm. The relationships at issue resulted in

14

acrimony, required Mr. Hare's withdrawal, and involved the same Client; Hare cannot allege a reasonable possibility of a future relationship, even if Hare had been a party to the first relationship.

Further, to prevail on this claim Mr. Hare must allege that "the defendant's conduct was independently tortious or unlawful." *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013). Purportedly to meet that burden, Mr. Hare only alleges the "breach of contract, fraud, and interference with an existing contract" that he "described above." Compl. ¶ 62. This bootstrapping fails for the reasons set forth above and this count falls as well.

### E. Hare has no standing to assert the forgoing claims

To establish standing, Mr. Hare has "the burden to plausibly allege a federal controversy." *Ghedi v. Mayorkas*, 16 F.4th 456, 464 (5th Cir. 2021). That burden includes plausibly alleging "three elements—(1) an injury in fact, (2) that is fairly traceable to the challenged action of the defendant, and (3) that is likely redressable by a favorable decision." *Id.* (internal citations and modifications omitted).

As discussed in detail above and incorporated herein by reference, Hare cannot establish an injury in fact as to contracts to which he was not a party, representations upon which he cannot rely, interference with contracts for which he was not a party, or prospective business that is not likely. He cannot trace any injury to any actions of Mr. Pant. Mr. Hare thus has no standing to sue.

15

### F.  There is no legally-cognizable conspiracy

"In order to adequately plead a claim for civil conspiracy, a plaintiff must adequately plead the underlying tort." *Homoki v. Conversion Servs., Inc.*, 717 F.3d 388, 402 (5th Cir. 2013) (citing *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 640 (5th Cir. 2007) ("If a plaintiff fails to state a separate claim on which the court may grant relief, then the claim for civil conspiracy necessarily fails.")). As such, any conspiracy liability must arise from the underlying torts[9] that are claimed to be perpetrated by the conspirators.

The only substantive difference between the allegations previously made in the Complaint and those made as part of the conspiracy count is that Hare has included Gau Bodepudi (his alleged former friend) as a co-conspirator. Whether Hare was fired (Compl. ¶ 68), told to "step aside" (*id.* ¶ 72), or "frozen out" (*id.* ¶ 73), none of those terms have any legal import above and beyond the previously-asserted claims. Rather, the conspiracy allegations fall within the aforementioned counts and likewise fail. Hare cannot allege that any representations were made to him, that such representations supersede existing contractual rights between the parties to those contracts or that he could otherwise rely upon them, or how any such representations

---

[9] "[A] conspiracy to breach a contract is not actionable under Texas law." *Leasehold Expense Recovery, Inc. v. Mothers Work, Inc.*, 331 F.3d 452, 463 (5th Cir. 2003); *see also PharMerica Corp. v. Advanced HCS LLC*, No. 2:17-cv-180-JRG, 2017 WL 7732174, at *6 (E.D. Tex. July 13, 2017).

were false. This last-gasp attempt to implicate Defendant and his colleague should be dismissed as improper harassment.

## VI.  <u>CONCLUSION</u>

The Complaint is fraught with misdirection and misquotations that fail to meet Mr. Hare's burden under Rule 12(b)(6). He does not allege: (1) that there was an attorney engagement letter between him personally and the Client (there never was one); (2) that he was a signatory in his own right to the unproduced Funding Agreement that would pay him directly (he was not); (3) that Mr. Pant was a party to the engagement letter, Funding Agreement, 7/13 Budget, or Amended Funding Agreement (he was not); (4) that any cognizable contract existed between Mr. Hare and Mr. Pant (it did not); or (5) that given his lack of any personal interest in the agreements at stake, that Hare had any basis to be defrauded (again, he did not).

Mr. Hare's scatter-shot diatribe in search of a windfall should not be countenanced. Indeed, Mr. Hare should withdraw his Complaint, lest it require further disclosure of his lack of respect for his duty of candor with this Court, and implicate the obligations of the bar to report this case for ethical review. Before such duties arise, this case should be dismissed.

Date:  August 3, 2022                    Respectfully submitted,


                                        */s/ Andrew M. Howard*
                                        Andrew M. Howard
                                        Texas Bar No. 24059973
                                        amh@howardlg.com
                                        Paul T. Beeler
                                        Texas Bar No. 24095432
                                        ptb@howardlg.com
                                        **Howard Law Group, PLLC**
                                        5220 Spring Valley Road, Suite 600
                                        Dallas, Texas 75254
                                        214-974-0585 Telephone
                                        469-645-0166 Facsimile

                                        *Attorneys for Defendant Sanjay Pant*


## CERTIFICATE OF SERVICE

   I hereby certify that, on  August 3, 2022, a true and correct copy of the above was electronically filed via the Court's CM/ECF system and served on counsel of record for Plaintiff.

                                        */s/ Andrew M. Howard*
                                        Andrew M. Howard

18