UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| JASPAL SINGH HARE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 2:22-CV-00189-JRG-RSP |
| | § | |
| SANJAY PANT, | § | DEMAND FOR JURY TRIAL |
| | § | |
| Defendant. | § | |

**DEFENDANT'S SECOND MOTION TO DISMISS**

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................................. 1

II.  FACTUAL BACKGROUND ............................................................................................... 2

    Plaintiff Jaspal Hare, Esq. .................................................................................................. 2

    The Agreements at issue. ................................................................................................... 3

    The purported 7/17/2019 email agreement. ..................................................................... 4

    Hare acted only through the Law Firm that terminated him. ............................................ 5

    Defendant Pant is not the Client nor a party to any alleged Agreement. .......................... 7

    Mr. Pant's conduct is not a legal cause of the alleged injuries ........................................ 8

III. STATEMENT OF ISSUES ................................................................................................. 9

IV.  LEGAL STANDARD .......................................................................................................... 9

V.   ARGUMENT ..................................................................................................................... 10

    Hare cannot state a claim for breach of contract .......................................................... 10

    Hare cannot allege breach of the Agreements as a party or via third-party beneficiary status. ...... 11

    Hare cannot allege fraud. ............................................................................................... 13

    Hare cannot allege intentional interference with existing contract ................................ 14

    Hare cannot allege wrongful interference with prospective contractual or business relations ....... 16

    There is no legally cognizable conspiracy ..................................................................... 17

    Mr. Hare cannot prevail on an unjust enrichment theory given the services are the subject of written contracts. ........................................................................................ 17

    Mr. Hare cannot establish legal causation as a matter of law ........................................ 19

    Mr. Hare has no standing ............................................................................................... 21

VI.  CONCLUSION .................................................................................................................. 24

i

## TABLE OF AUTHORITIES

**Cases**

*ACS Primary Care Physicians S.W., P.A. v. UnitedHealthcare Ins. Co.*, 514 F. Supp. 3d 927 (S.D. Tex. 2021) ................................................................................................................................. 22

*Adidas Am. Inc. v. Shoebacca Ltd.*, No. 3:20-cv-03248-N, 2021 WL 4399745 (N.D. Tex. Sept. 27, 2021) ......................................................................................................................................... 22

*Alamo Forensic Servs., LLC v. Bexar Cty.,* 861 Fed. Appx. 564 (5th Cir. 2021) ........................ 29

*Ambrosia v. Carter's Shooting Ctr., Inc.,* 20 S.W.3d 262 (Tex. App. –Houston [14th Dist..] 2000, pet. denied) .......................................................................................................................... 24

*Apfa Inc. v. Uatp Mgmt., LLC,* 537 F. Supp. 3d 897 (N.D. Tex. 2021) ...................................... 26

*Capozelli v. Allstate Insurance Company*, No. 2:13-CV-00260-JRG, 2014 WL 786426 (E.D. Tex. Feb. 25, 2014) .................................................................................................................... 26

*Christus Health v. Quality Infusion Care, Inc.*, 359 S.W.3d 719 (Tex. App.—Houston 2011) .................. 22

*Cibolo Waste, Inc. v. City of San Antonio,* 718 F.3d 469 (5th Cir. 2013) ...................................... 26

*Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909 (Tex. 2013) .............................. 20

*Copeland v. Merrill Lynch & Co., Inc.*, 47 F.3d 1415 (5th Cir. 1995) ............................... 13

*El Paso Healthcare Sys., Ltd. v. Murphy*, 518 S.W.3d 412 (Tex. 2017) ........................................ 19

*ESI/Employee Sols., L.P. v. City of Dall.,* 450 F. Supp. 3d 700 (E.D. Tex. 2020) ........................ 29

*First Bank v. Brumitt*, 519 S.W.3d 95 (Tex. 2017) ..................................................................... 14

*Ford Motor Co. v. Ledesma,* 242 S.W.3d 32 (Tex. 2007) ............................................................ 23

*Foreca, S.A. v. GRD Dev. Co.*, 758 S.W.2d 744 (Tex. 1988) ..................................................... 13

*Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671 (Tex. 2000) ................................................... 22

*Hiers v. Bd. of Reg. of the U. of N. Tex. Sys.*, No. 4:20-cv-321-SDJ, 2022 WL 748502 (E.D. Tex. Mar. 11, 2022) .................................................................................................................. 14

*HIS Cedars Treatment Center of DeSoto, Texas, Inc. v. Mason,* 143 S.W.3d 794 (Tex. 2004) ...................... 23

*Hoffman v. L & M Arts*, 838 F.3d 568 (5th Cir. 2016) ................................................................. 16

*Holloway v. Skinner*, 898 S.W.2d 793 (Tex. 1995)..................................................................... 18

*Homoki v. Conversion Servs., Inc.*, 717 F.3d 388 (5th Cir. 2013) .................................................. 21

*Kay v. Ehrler*, 499 U.S. 432 (1991) ............................................................................................ 2

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) ................................... 27

*Liberto v. D.F. Stauffer Biscuit Co.*, 441 F.3d 318 (5th Cir. 2006) ................................................ 13

*Matthews v. LeBlanc,* No. 21-40086, 2022 U.S. App. LEXIS 20602 (5th Cir. July 26, 2022) ................ 29

*Meador v. Apple, Inc.*, No. 6:15-cv-715, 2016 U.S. Dist. LEXIS 189185 (E.D. Tex. 2016) ................... 23

*N. Texas Opportunity Fund L.P. v. Hammerman & Gainer Int'l, Inc.*, 107 F. Supp. 3d 620 (N.D. Tex.

2015) ................................................................................................................................ 18

*Natural Polymer Int'l Corp. v. Hartz Mountain Corp.*, 426 F. Supp. 3d 300 (E.D. Tex. 2019) .................. 22

*Nursery Decals and More, Inc. v. Neat Print, Inc.*, 568 F. Supp. 3d 681 (N.D. Tex. 2021) .......................... 19

*Pelletier v. Victoria Air Conditioning, Ltd.*, No. 18-40390 (5th Cir. July 12, 2019) ...................................... 26

*Santander Consumer USA, Inc. v. Zeigler Chrysler Dodge Jeep Downers Grove, LLC*, No. 3:16-CV-3310-B,

2017 WL 2729998 (N.D. Tex. June 26, 2017) ............................................................................... 20

*Sawyer v. E.I.DuPont De Nemours & Co.*, 689 F.3d 463 (5th Cir. 2012) ........................................ 19

*Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.,* 702 F.3d 794 (5th Cir. 2012)........ 27

*Superior MRI Servs. Inc., v. Alliance Healthcare Servs., Inc.,* 778 F.3d 502 (5th Cir. 2015) .......................... 26

*T.O. Stanley Boot Co. v. Bank of El Paso,* 847 S.W.2d 218 (Tex. 1992)......................................... 13

*Tawes v. Barnes*, 340 S.W.3d 419 (Tex. 2011) ................................................................. 15

*Town of Chester v. Laroe Estates, Inc.,* 137 S. Ct. 1645, 198 L. Ed. 2d 64 (2017) ......................... 26

*Unicorn Global, Inc. v. GoLabs, Inc.*, 447 F. Supp. 3d 535 (N.D. Tex. 2020) .............................. 19

*Union Pump Co. v. Albritton,* 898 S.W.2d 773 (Tex. 1995) ........................................................ 23

*United States v. Johnson*, 632 F.3d 912 (5th Cir. 2011) ................................................................ 28

*USAA Texas Lloyds Company v. Menchaca*, 545 S.W.3d 479 (Tex. 2018) .................................. 12

*Vortt Expl. Co. v. Chevron U.S.A., Inc.*, 787 S.AW.2d 942 (Tex. 1990) ...................................... 22

*WickFire, L.L.C. v. Laura Woodruff*, 989 F.3d 343 (5th Cir. 2021) ............................................. 18

*Williamson v. Tucker,* 645 F.2d 404 (5th Cir. 1981) ..................................................................... 11

**Statutes**

Fed. R. Civ. P. 12(b)(1) ................................................................................................................. 11

Fed. R. Civ. P. 12(b)(6) ................................................................................................................. 10

**Other Authorities**

Restatement (Second) of Torts § 431 cmt. a (1965) ............................................................ 23

## I.   <u>INTRODUCTION</u>

Plaintiff Jaspal Hare, Esq. contends he had an irrevocable right to millions of dollars in both hourly and contingency fees between an unnamed client and his unnamed former law firm, allegedly established by a fee agreement to which Hare is not a party. [1] Because Plaintiff has twice failed to assert facts, non-conclusory allegations, or even an injury on which actionable claims may be sustained, this case should be dismissed.

Indeed, even after utilizing his option to amend his complaint without leave, Mr. Hare's claims are devoid of legal substance. Despite Defendant challenging Mr. Hare's reliance on selectively modified portions of underlying agreements, Mr. Hare still refuses to provide those agreements to the Court. Instead, Mr. Hare corrected only one of his misleading quotations and, in doing so, admits that he was **not** engaged as lead counsel. *Compare* Complaint ¶ 16 ("*[a]s lead counsel [Mr. Singh Hare] has*") *with* FAC ¶ 16 ("*[a]s lead counsel, the Firm has*").

Because he is not a party to any applicable agreement, Mr. Hare invents a contract claim based upon a summary email. But even a cursory review of the email reveals that Mr. Pant was recounting the position of the Client.[2] Even if that were not the case, the email cannot be a contract as a matter of law for not evidencing an agreement (it twice states "no commitment") and for omitting material terms.

Agreement snippets and incomplete emails aside, after two opportunities Mr. Hare cannot: (1) plead he was party to any enforceable agreement; (2) plead that Defendant Sanjay Pant was a party to

---

[1] Mr. Hare was terminated by his former law firm—a documented fact that will be proven if this case survives this Second Motion to Dismiss Even without that proof, the Court oversaw the underlying litigation and has judicial notice regarding Mr. Hare's limited substantive involvement and subsequent withdrawal prior to the termination of the case. Mr. Hare did not challenge these allegations in his First Amended Complaint (hereinafter, "FAC").

[2] Capitalized terms not defined herein mirror those used by Mr. Hare in his FAC.

any enforceable agreement; (3) rely upon representations contrary to the agreements or law; (4) plead rights with which anyone could interfere; (5) demonstrate cause in fact for any tortious claims made; or (6) recover under unjust enrichment/quantum meruit.

These pleading defects not only fail to state a claim upon which relief could be granted, they show a lack of standing—another matter unaddressed in the FAC. The undisclosed "Law Firm" has any and all rights regarding contracts it signed, not Mr. Hare. The "Client," not Mr. Pant, had any and all rights and obligations regarding the Engagement Letter and termination of the Law Firm, as is required by ethical rules. And, again, Mr. Hare cannot allege that Mr. Pant is a party to **any** of those agreements.

As a self-represented lawyer "with over a decade in experience," Mr. Hare should know better than to impose upon the Court with such claims, particularly after receiving an opportunity to withdraw them. Indeed, "[t]he adage that 'a lawyer who represents himself has a fool for a client' is the product of years of experience by seasoned litigators," and countermands Plaintiff's self-aggrandization in his Complaint. *Kay v. Ehrler*, 499 U.S. 432, 437-38 (1991). Particularly given Plaintiff's unsuccessful attempt to amend, dismissal with prejudice is appropriate.

## II.      FACTUAL BACKGROUND

**Plaintiff Jaspal Hare, Esq.**

Plaintiff claims to be "a licensed attorney specializing in patent litigation with over a decade of experience," who "spent four years in New York City working for the law firm of Cadwalader, Wickersham and Taft." FAC ¶¶ 2, 8. Mr. Hare touts his purported ability to properly "vet" patents, to "review" patent cases, and to prepare a "detailed strategy memorandum" prior to engagement by the client. *Id.* ¶¶ 8, 10, 13, 16. He does not claim to be an expert trial lawyer, however, and while he extols a *Markman* ruling in the underlying litigation as his success (*id.* ¶ 22), Mr. Hare also admits that it was necessary to bring in "**co**-lead-counsel" from "a short list of elite attorneys" (*id.* ¶¶ 24, 25

(emphasis in original)), one of which took "over the day-to-day activities for the district court litigation" (*id.* ¶ 28). Mr. Hare later complains that "co-lead counsel" was allowed to "*call all the shots*" at the *Markman* hearing and thus concedes he cannot laud that purported success. *Id.* ¶ 34 (emphasis in original).

**The Agreements at issue.**

Mr. Hare asserts claims for breach of contract, fraud, intentional interference with existing contract, wrongful interference with prospective contractual or business relations, conspiracy, and unjust enrichment arising out of four documents that are omitted from the FAC:

> (1) the "Funding Agreement." *Id.* ¶ 14;
>
> (2) the "Engagement Letter." *Id.* ¶ 16;
>
> (3) the "7/13 Budget." *Id.* ¶ 29; and
>
> (4) the "Amended Funding Agreement." *Id.* ¶¶ 26, 26 n. 16.

(collectively, the "Agreements").[3] Of paramount importance, Mr. Hare never alleges any of the Agreements were executed by him or Mr. Pant in either's respective personal capacity. To the contrary, Plaintiff admits that the parties to these agreements are Client, Mr. Hare's former law firm,[4] Co-Counsel, and/or Funder. Specifically:

> (1) "The Client agreed to … the Funding Agreement." *Id.* ¶ 14;

---

[3] Mr. Hare makes reference to interference with his employment agreement with his firm, but provides no specific allegations of such interference; therefore, and cause of action related thereto should be dismissed.

[4] The single-member law firm, Singh Hare PLLC, that Hare used to file this lawsuit was not in existence at the time of the events alleged in the FAC.  It was formed on October 6, 2021, after Hare was fired by the anonymous law firm mentioned in the FAC.  A quick search for Mr. Hare reveals that the anonymous firm is likely Spencer Fane LLP. *See,* *https://lawyers.justia.com/lawyer/jaspal-singh-hare-1328248*. No reference in the FAC to a "firm" or "law firm" or an "engagement letter" can be referring to Singh Hare PLLC, and Plaintiff makes no direct attempt to do so.

(2)  "The Client also formally retained Mr. Singh Hare **through the law firm** for which he worked." *Id.* ¶ 16 (emphasis added);

(3) "*[a]s* **lead counsel**, *the Firm has authority to* **control**, **manage**, **supervise**, *and* **coordinate** *the Matters*." *Id.* (emphasis in original);

(4) Regarding the 7/13 Budget, "Mr. Pant … acted as liaison between Co-Counsel and the existing team." *Id.* ¶ 29; and

(5)  Client, Co-Counsel, and Funder executed the Amended Funding Agreement, and "[n]o changes were made to Mr. Singh Hare's Engagement Letter," which thus continued to be "through the law firm" with the Firm as "lead counsel." *Id.* ¶¶ 26, 16.

Any agreement or engagement between Client, Law Firm, Co-Counsel, and/or Funder were between parties independent and separate from Mr. Pant and Mr. Hare, and Mr. Hare (again) does not allege anything substantive to the contrary.

**The purported 7/17/2019 email agreement.**

Mr. Hare contends that "Based on Exhibit 1 and a course of dealing, among other things, a valid contract exists where Mr. Pant agreed to use Mr. Singh Hare's services if the Funder was used" and defines that email as the "7/17/2019 Agreement." Mr. Hare fails to attach the email in question to the FAC. Assuming he refers to Exhibit 1 to the Complaint, the entirety of the purported contract provides:

4

| | |
|---|---|
| **From:** | Sanjay Pant <spant@ip-edge.com> |
| **Sent:** | Wednesday, July 17, 2019 10:57 AM |
| **To:** | Hare, Jaspal |
| **Cc:** | info admin |
| **Subject:** | ▮▮▮ Opportunity |

Hi Jaspal,

I just spoke with ▮▮▮. I explained to him that you are willing to work up the case to present to your funder buddy, with no commitment or obligation to use your firm as litigation counsel and your funder buddy as a funder. However, if we did use your funder buddy to fund litigation, as a result of your efforts, then we would agree to use your firm as litigation counsel, assuming your firm+funder rates made sense. However, there is no commitment to use your funder or your firm.

Let me know what you need from me to advance the ball.

Regards,
Sanjay

As is apparent from the text of the email, it was sent by an ip-edge.com email address, it summarizes Mr. Pant's conversation with Client ("I just spoke with [redacted]. I explained to him that . . . "), it references the anonymous firm ("your firm"), it twice includes "no commitment," and recognizes material terms have not been agreed ("assuming your firm+funder rates make sense").

**Hare acted only through the Law Firm that terminated him.**

Plaintiff's repeated failure to provide the underlying Agreements to the Court is telling, as is his admission that he was engaged through his former anonymous law firm that was "lead counsel." Hare further admits that there was a termination clause in the Engagement Letter, covering termination with, and without, cause.  *Id.* ¶ 17. And the quoted clause makes clear, again, that the parties to the Engagement Letter are "the Client" and "the Firm" ("If the Firm terminates"; "You agree the Firm"; "If the Firm"; "our legal fees")—***not*** Mr. Hare or Mr. Pant. *Id.*

Plaintiff's subsequent attempts to contradict these admissions are unsuccessful. Even Mr. Hare's selective quotes make clear he was not a party to any relevant agreement. Regarding the

Funding Agreement, the contractual parties are the "Claimant" (the Client), the "Lead Law Firm" (Hare's former anonymous firm), and the Funder:

> 14.      The Client agreed to the terms.  On November 19, 2019, the term sheet was fully executed.  The deal closed around June of 2020 with the signing of a formal funding agreement (the "Funding Agreement").  The Funding Agreement states (emphasis added):
>
> *Name of Lead Attorney: Jaspal S. Hare.*
>
> *              *              *
>
> Lead Law Firm has agreed with Claimant [(the Client)] that it, in comporting with the applicable rules of professional conduct, will use all commercially reasonable efforts to (i) *zealously represent Claimant in Claimant's pursuit of the Litigation and reasonable monetization of the Litigation through settlement or final judgment;* (ii) in good faith to maintain its representation of Claimant and its Engagement Agreement; and (iii) to not act to circumvent the economic terms of this Agreement.

*Id.* ¶ 14 (highlighting added).  That Hare was designated "Lead Attorney" does not make him "Lead Law Firm," lest one of those definitions be construed to have no meaning in contravention of Texas law.[5] Moreover, Plaintiff admits that the anonymous "Firm" was "lead counsel." *Id.* ¶ 16.

Despite quoting the termination clause in the Engagement Letter, it appears Hare is claiming that once "he" was hired, he could never be dismissed. *Id.* ¶ 45 (alleging "a contract exists where Mr. Pant agreed to use Mr. Singh Hare's services if the Funder was used."). Mr. Hare never explains or alleges why Mr. Pant purportedly had any right to permanently bind Client (or any client) to a representation agreement in violation of Mr. Hare's ethical duties. TEX. DISP. RULES PROF. CONDUCT

---

[5] "A contract should be interpreted as to give meaning to all of its terms—presuming that every provision was intended to accomplish some purpose, and that none are deemed superfluous." *In re Isbell Recs., Inc.*, 586 F.3d 334, 337 (5th Cir. 2009) (internal citations and modifications omitted").

1.02, cmt. 4 ("the client may not be asked … to surrender the right to terminate the lawyer's services"). If such a contract existed (it does not), it would be void.[6]

Finally, Mr. Hare then claims he was a party to a budget contract and again edits the quoted language to insert his name in brackets with that of the Law Firm. *Id.* ¶ 29. The logical result is that Mr. Hare expects the Court to believe that even though the anonymous Law Firm was retained by the client, the "7/13 Budget" "included a line item with $1.2+ million in discounted fees for Mr. Singh Hare's (and only Mr. Singh Hare's) continued role through trial" in the remaining six months. *Id.* Even Mr. Hare's various modifications to the agreements—including neglecting to modify the quoted language to remove the article "the"—demonstrate he was not entitled to such a windfall. *Id.* ¶ 37 ("the [Mr. Singh Hare] has the authority to…").

**Defendant Pant is not the Client nor a party to any alleged Agreement.**

Mr. Hare's subterfuge is not limited to his attempts to insert himself in the place of his former anonymous Law Firm; he continues by attempting to conflate Mr. Pant with the Client or IP Edge. Indeed, as discussed above, Mr. Hare does not allege that Mr. Pant or IP Edge was a party to the Funding Agreement, Engagement Letter, 7/13 Budget, or Amended Funding Agreement.

Moreover, Mr. Hare's allegations conflating Mr. Pant with his principal are self-defeating. Mr. Hare admits Mr. Pant is a managing member of IP Edge LLC. FAC ¶ 9. Mr. Hare further concedes that Mr. Pant's involvement in the underlying facts resulted from the representation of "the Client as a patent broker and/or licensing agent ***through IP Edge***." *Id.* ¶ 11 (emphasis added). Because Mr. Hare cannot allege that Mr. Pant acted individually or signed a contract in his individual capacity, Mr.

---

[6] The reason a client retains the right to fire its counsel is plain, but even more apparent under the facts before the Court. In the event this lawsuit passes the pleading stage, Defendant will present evidence that the anonymous Law Firm fired Hare for unethical behavior, namely a demand from Hare to his former firm's accounting department for an unauthorized six-figure payment. Tellingly, Plaintiff made no attempt to plead to the contrary after the Motion to Dismiss was filed.

Hare thus effectively admits he has no claims against Mr. Pant because all of Defendant's actions were on behalf of his principal.[7]

### Mr. Pant's conduct is not a legal cause of the alleged injuries

As to Mr. Hare's claims sounding in tort, Mr. Hare has not and cannot allege facts to establish that Mr. Pant's conduct was the legal cause of Mr. Hare's alleged loss of "$1.2+ million in hourly fees and a 10% contingency fee." FAC ¶¶ 62 (Count III & V). Nor can Mr. Hare allege facts that establish Mr. Pant's conduct caused Mr. Hare to lose "millions in legal fees" on the potential Solar Portfolio deal between the unnamed Client and Mr. Hare's former unnamed Law Firm. *Id.* ¶69 (Count IV).

As alleged throughout plaintiffs' Amended Complaint, Mr. Hare's tort claims in Counts III & V, depend from Mr. Hare's belief that the unnamed "Client contractually delegated authority to manage and control the matters solely to Mr. Singh Hare." *Id.* ¶32; ("Mr. Singh Hare would not have agreed to the Amended Funding Agreement without continued control of the matters." *Id.* ¶32 fn 22.) However, according to the agreement cited by Mr. Hare, the former anonymous Law Firm, and not Mr. Hare, was contractually delegated the authority to manage and control the matters. *Id.* ¶ 16. As for Mr. Hare's allegation in Count IV related to a potential deal on the "Solar Portfolio," the alleged "loss in millions in legal fees" depends from a "term sheet that expressly designated Mr. Singh Hare's former Law Firm as lead counsel," and not Mr. Hare. *Id.* ¶ 65.

More importantly, the Amended Complaint demonstrates that Mr. Hare's alleged injury in Count III and IV ultimately arises from the former unnamed Client directing an unnamed attorney "to file papers to have Mr. Singh Hare removed from the court's docket in the underlying patent litigation." *Id.* ¶¶ 41-43. Further, according to the Amended Complaint, Mr. Pant's involvement in the underlying facts is limited to the representation of "the Client as a patent broker and/or licensing

---

[7] To be abundantly clear, IP Edge is not a party to the aforementioned agreements either and a claim against it would fail for the same reasons as the claims alleged by Mr. Hare here.

agent through IP Edge." *Id.* ¶ 11.  Critical to cause in fact, the Amended Complaint alleges that at no point did Mr. Pant ever attempt to terminate Mr. Singh Hare pursuant to the terms of the Engagement Agreement – nor could he since Mr. Pant was a stranger to the Engagement Agreement. *Id.* ¶55. Because of the foregoing, and as explained below, Mr. Hare cannot allege any set of facts which establish that Mr. Pant was the legal cause of Mr. Hare's alleged injuries.

### III.    <u>STATEMENT OF ISSUES</u>

(1)  Whether Plaintiff failed to state a claim; and

(2)  Whether Plaintiff has standing to assert his claims.

### IV.    <u>LEGAL STANDARD</u>

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief may be granted."  *See* FED. R. CIV. P. 12(b)(6).   A valid Complaint "must contain sufficient factual material, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations marks omitted).  Plausibility requires the plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* (internal quotations marks omitted). This test requires more than a "sheer possibility"; a complaint that alleges facts that are merely consistent with a defendant's liability "falls short" of pleading a valid lawsuit. *Id.*

Rule 12(b)(1) provides for dismissal of an action for "lack of subject matter jurisdiction." *See* FED. R. CIV. P. 12(b)(1). The Court may grant a dismissal for lack of constitutional standing under Rule 12(b)(1) for lack of subject matter jurisdiction. *See Pelletier v. Victoria Air Conditioning, Ltd.*, No. 18-40390, at *5-6 (5th Cir. July 12, 2019). Moreover, the Court may grant a dismissal for lack of prudential standing under Rule 12(b)(6). *Pelletier,* No. 18-40390, at *6. Mr. Hare can neither establish constitutional standing nor prudential standing; thus, the Court should dismiss Mr. Hare's complaint for lack of subject matter jurisdiction, or in the alternative, for failure to state a claim.

## V.  ARGUMENT

**Hare cannot state a claim for breach of contract.**

The only alleged contract that Mr. Pant is accused of breaching is contained in Exhibit 1 to the Complaint.[8]  That email from Mr. Pant (spant@ip-edge.com) to Hare (address omitted) states in relevant part:

> I just spoke with [redacted].  I explained to him that you are willing to work up the case to present to your funder buddy, with **no commitment or obligation to use your firm as litigation counsel** and your funder buddy as funder.  However, if we did use your funder buddy to fund litigation, as a result of your efforts, then we would agree to use **your firm** as litigation counsel, assuming your firm+funder rates made sense.  **However there is no commitment to use your funder or your firm.**

Complaint, Ex. 1 (Dkt. 1-2) (emphasis added).

This is email is simply not a contract and cannot be breached.[9]  It is at most a summary of a conversation with the Client regarding a potential future agreement without material terms.  Notably, the email includes: (1) "no commitment or obligation to use your firm as litigation counsel"; (2) open material terms ("firm+funder rates"); and (3) "no commitment to use your funder or your firm."  This email does not evidence a "meeting of the minds" that resulted in an enforceable contract.  *USAA Texas Lloyds Company v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018)**Error! Bookmark not defined.** (a valid contract requires "the parties had a meeting of the minds on the essential terms of the contract (mutual assent)").  There is no intent to be bound, as required by law. *Foreca, S.A. v. GRD Dev. Co.*, 758 S.W.2d 744, 746 (Tex. 1988).

---

[8] Hare does not directly allege breach of the Engagement Agreement, Funding Agreement, Amended Funding Agreement, or 7/13 Budget, which is a tacit admission that neither he nor Pant are parties to those agreements.

[9] Defendant denies that this email is a contract, that Mr. Pant had any authority to bind the Client, or that this email constitutes anything other than a summary of a conversation, which will be proven if necessary upon a motion for summary judgment.

Moreover, "agreements to agree, particularly absent material terms … are unenforceable under Texas law." *Copeland v. Merrill Lynch & Co., Inc.*, 47 F.3d 1415, 1425 (5th Cir. 1995). Where an "essential term is open for future negotiations, there is no binding" contract." *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992); *see also Liberto v. D.F. Stauffer Biscuit Co.*, 441 F.3d 318, 323 (5th Cir. 2006). Exhibit 1 to the Complaint has none of these essential elements: (1) it includes "no commitment or obligation"; (2) it is preconditioned upon "us[ing] your funder buddy"; (3) it is conditioned upon open, material terms, including "assuming your firm+funder rates made sense"; and (4) again, reiterates "no commitment to use your funder or your firm."

On top of that, the email was not even an agreement to discuss the possible employment of Hare ***personally***. It specifically mentions "your firm," referring to Hare's former law firm, at which he was "of counsel."

Moreover, Hare failed to allege that Mr. Pant had the authority to bind Client to enter into an engagement with the anonymous law firm, let alone agree to material terms on behalf of the Client (he did not).  Mr. Pant was not a party to any of the underlying agreements cited by Mr. Hare, and the email in Exhibit 1 of the Complaint was simply Mr. Pant's summary of a conversation between him and the Client.

Accordingly, Hare can show none of: (1) the existence of a contract; (2) to which he was a party or had rights; (3) that was breached; or (4) caused him injury. His FAC made no attempt to show the contrary.

### Hare cannot allege breach of the Agreements as a party or via third-party beneficiary status.

One of Mr. Hare's few modifications to the Complaint was to claim a third-party interest in the Funding Agreement, Engagement Letter, and Amended Funding Agreement." *See* FAC ¶¶ 19, 27. According to Mr. Hare, he has the right to enforce those agreements because they "provide

11

compensation directly for the benefit of Mr. Singh Hare." *Id.*; FAC ¶ 27. Such meager allegations are insufficient under Texas law.

First, it is an "elementary rule of Texas law" that "privity of contract is an essential element for recovery in an action based on a contractual theory." *Hiers v. Bd. of Reg. of the U. of N. Tex. Sys.*, No. 4:20-cv-321-SDJ, 2022 WL 748502, at *30 (E.D. Tex. Mar. 11, 2022) (citing *First Bank v. Brumitt*, 519 S.W.3d 95, 102 (Tex. 2017)). Moreover, "actions taken by an agent on behalf of the principal do not bind the agent." *Id.* (quoting *Holloway*, 898 S.W.2d at 795). "Because [Hare] fails to plausibly allege that he was in privity of contract with [Pant] in [his] individual capacity[y], he cannot hold [him] individually liable for breach of contract."

Second, Mr. Hare's third-party beneficiary allegations are insufficient because courts "look solely to the contract's language, construed as a whole" to determine whether contracting parties intended to benefit a third party. *First Bank*, 519 S.W.3d at 102 (Tex. 2017). Despite two opportunities, Mr. Hare has declined to provide the Court with copies of the applicable agreements – because to do so would admit he is not a party to any.

Third, for a person to be a third-party beneficiary, a "contract must include 'a clear an unequivocal expression of the contracting parties' intent to directly benefit a third party,' and any implied intent to create a third-party beneficiary is insufficient." *Id.* at 103 (quoting *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011)). Indeed, "Courts may not presume the necessary intent"; rather, the Court "must begin with the presumption that the parties contracted solely for themselves." *Id.* (internal quotations omitted). Any "doubts must be resolved against conferring third-party beneficiary status." *Id.* Mr. Hare's two conclusory paragraphs cannot supplant this presumption.

Third, whether Mr. Hare received compensation related to the subject contracts is of no consequence. "Contracts often benefit third parties." *Id.* at 104. But "[w]hether a third party may sue to enforce the parties' agreement, however, depends not on whether the third party will benefit or on

12

whether the parties knew that the third party would benefit, but on whether the contracting parties **intended to secure a benefit to a third party** and **entered into the contract directly for the third party's benefit**." *Id.* (emphasis added) (internal quotations and alterations omitted). That Mr. Hare was paid for legal services from his former law firm does not render him able to enforce Agreements to which he was not a party. *Id.* at 103-4 (collecting cases declining to confer third-party beneficiary status, including when contracts expressly required third-parties to be paid prior to contracting parties). Plaintiff has failed to provide the Agreements or to allege facts sufficient to establish his right to enforce any of the Agreements.

**Hare cannot allege fraud.**

Mr. Hare describes only two representations for which he claims he was defrauded: (1) regarding the "7/13 Budget"; and (2) that Hare "would be co-lead counsel." FAC ¶¶ 51(a), 51(b).

First, Hare asserts that Mr. Pant defrauded him by transmitting a "budget" that allegedly included line items for work to be done by what is now Hare's former Law Firm. *Id.* ¶ 51(a). Hare cannot allege that he relied upon such "representations" in a budget, which is not a statement of present fact. A budget is a prediction. A "prediction, or statement about the future, is essentially an expression of opinion" and "future predictions are generally not actionable." *Hoffman v. L & M Arts*, 838 F.3d 568, 579 (5th Cir. 2016).

Even if a "budget" constitutes a representation, Hare does not allege he was a direct beneficiary in his own right to the "budget" that was allegedly proposed for the Amended Funding Agreement. If a representation at all, the budget was not a representation to Mr. Hare, but rather to the former unnamed Law Firm. And if such a representation was false, Mr. Hare was not damaged; the unnamed Law Firm was. Mr. Hare further cannot allege reliance as the Engagement Agreement includes a termination provision. Mr. Hare cannot even allege that the representation was false; because he was terminated, he has no idea what was billed by the Law Firm to the Client, and the lack

13

of specific allegations belies his lack of reliance. Mr. Hare alleges nothing new on this point in the FAC.

Second, Hare claims fraud in the alleged misrepresentation that Hare would be "co-lead counsel" with the ability to manage the case. *Id.* ¶ 51(b). Hare does not allege Pant had authority to retain Hare as "co-lead counsel with express authority to manage and coordinate the matters."  Pant was not the Client and was not a party to the Engagement Letter, Funding Agreement, or Amended Funding Agreement, a fact of which Hare is aware. Hare cannot show he relied on any statement by Pant regarding Client's choice of counsel, because Hare knew Pant was not a party and had no binding authority over any party to the Engagement Letter, Funding Agreement, or Amended Funding Agreement.

Further, Hare could not have relied upon such a representation because, as a lawyer, he is presumed to know the ethical rules. Indeed, as an attorney who filed in this District, Mr. Hare "should be familiar with the duties and obligations imposed upon members of this bar by the Texas Disciplinary Rules of Professional Conduct." L.R. AT-2.  Accordingly, Mr. Hare knows that "the client may not be asked … to surrender the right to terminate the lawyer's services." TEX. DISP. RULES PROF. CONDUCT 1.02, cmt. 4. Designation of counsel is the sole province of the client to whom Hare (and Pant) was necessarily subservient, and Hare could not have relied upon any statement contrary to the ethical rules or the provisions of the Engagement Agreement. Again, the FAC contains nothing new to the contrary.

**Hare cannot allege intentional interference with existing contract**

Hare complains that there are three contracts with which Mr. Pant intentionally interfered: (1) an engagement letter between Hare's former Law Firm and the Client; (2) the Funding Agreement between the Client, Hare's former Law Firm, and the Funder; and (3) an employment contract between Hare and his former Law Firm. FAC ¶ 58.

14

"In Texas, 'a **_party_** to a contract has a cause of action for tortious interference….'" *N. Texas Opportunity Fund L.P. v. Hammerman & Gainer Int'l, Inc.*, 107 F. Supp. 3d 620, 635 (N.D. Tex. 2015) (emphasis added) (quoting *Holloway v. Skinner*, 898 S.W.2d 793, 794–95 (Tex. 1995)). As discussed in detail above, Mr. Hare is **_not a party_** to the Engagement Agreement or Funding Agreement, has no third-party beneficiary status, cannot show damages, and cannot sustain this claim. *WickFire, L.L.C. v. Laura Woodruff*, 989 F.3d 343, 353 (5th Cir. 2021), as revised (Mar. 2, 2021.

The only contract in which Hare had a direct interest was his alleged employment agreement with his former Law Firm. Mr. Hare, however, has not alleged any material terms regarding that contract, including but not limited to the term of that contract and whether it was terminable at-will or for cause.[10] Without such an allegation, "[e]mployment in Texas is presumed to be at will." *Sawyer v. E.I.DuPont De Nemours & Co.*, 689 F.3d 463, 467 (5th Cir. 2012). "And an at-will employee may be discharged for good cause, bad cause, or no cause at all." *Id.* (internal citations omitted). Mr. Hare cannot allege that Mr. Pant tortiously interfered with an at-will relationship. *Nursery Decals and More, Inc. v. Neat Print, Inc.*, 568 F. Supp. 3d 681, 704 (N.D. Tex. 2021) (citing *El Paso Healthcare Sys., Ltd. v. Murphy*, 518 S.W.3d 412, 421 (Tex. 2017)); *Unicorn Global, Inc. v. GoLabs, Inc.*, 447 F. Supp. 3d 535, 547 (N.D. Tex. 2020) (third-party's decision to cease to sell plaintiff's product, where contract was at-will, "is not sufficient to establish tortious interference with contract."). If Mr. Hare's contract was anything other than at-will, he would have provided the Court with allegations to the contrary in the FAC. He did not.

---

[10] Plaintiff's sole allegation regarding the nature of his purported contract with his former Law Firm is found at footnote 12: "Mr. Singh Hare's former firm was contractually obligated to pay him based on fees received by the Firm in accordance with specific formulas." As the Court is aware, many law firms use similar compensation structures, but do so outside the context of a contract guaranteeing employment for a term.

In sum, Hare has failed to plead that he is a party to any contract other than his employment agreement, and he fails to allege material facts regarding that. He fails to allege concrete harm. Hare's "contract" with his former firm was terminated by that firm based on malfeasance. Hare's prolix FAC does nothing to absolve him from that firing.

### Hare cannot allege wrongful interference with prospective contractual or business relations

Hare alleges that Mr. Pant wrongfully interfered regarding a business relationship "with respect to another patent controlled by the Client." FAC ¶ 65. But Hare does not allege a "reasonable possibility" or likelihood that a future contract would have arisen between himself and the Client; indeed, he admits the patent is "controlled" by another. *See Santander Consumer USA, Inc. v. Zeigler Chrysler Dodge Jeep Downers Grove, LLC*, No. 3:16-CV-3310-B, 2017 WL 2729998 at *9 (N.D. Tex. June 26, 2017) ("To establish tortious interference with prospective contract, one must first show more than speculation or the bare possibility that the plaintiff would have entered into a future business relationship."). "Mere negotiations [regarding future contracts] are not enough." *Id.*

To the contrary, Hare eliminated any reasonable possibility of prospective contract by his termination from the unnamed Law Firm. The relationships at issue resulted in acrimony, required Mr. Hare's withdrawal, and involved the same Client; Hare cannot allege a reasonable possibility of a future relationship, even if Hare had been a party to the first relationship.

Further, to prevail on this claim Mr. Hare must allege that "the defendant's conduct was independently tortious or unlawful." *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013). Purportedly to meet that burden, Mr. Hare only alleges the "breach of contract, fraud, and interference with an existing contract" that he "described above." FAC ¶ 66. This bootstrapping fails for the reasons set forth above. This count falls as well.

16

**There is no legally cognizable conspiracy**

"In order to adequately plead a claim for civil conspiracy, a plaintiff must adequately plead the underlying tort." *Homoki v. Conversion Servs., Inc.*, 717 F.3d 388, 402 (5th Cir. 2013) ("If a plaintiff fails to state a separate claim on which the court may grant relief, then the claim for civil conspiracy necessarily fails.")). As such, any conspiracy liability must arise from the underlying torts[11] that are claimed to be perpetrated by the conspirators.

The only substantive difference between the allegations previously made in the Complaint and those made as part of the conspiracy count is that Hare has included Gau Bodepudi (his alleged former friend) as a co-conspirator. Whether Hare was "sidelined", told to "step aside", or subject to a "freeze-out" (FAC ¶ 76), none of those terms have any legal import above and beyond the previously asserted claims. Rather, the conspiracy allegations fall within the aforementioned counts and likewise fail. Hare cannot allege that any representations were made to him, that such representations supersede existing contractual rights between the parties to those contracts or that he could otherwise rely upon them, or how any such representations were false. This attempt to implicate Defendant and his colleague should be dismissed as improper harassment.

**Mr. Hare cannot prevail on an unjust enrichment theory.**

As a Hail-Mary attempt to avoid the Motion to Dismiss, Mr. Hare added a claim for "Quantum Meruit/Unjust Enrichment" to the FAC. Mr. Hare alleges that he "furnished valuable benefits of services as described in greater detail above and the Client and Mr. Pant accepted the benefit of same." FAC ¶ 79. Alternatively, Mr. Hare alleges that "a benefit has been conferred upon the Client and Mr. Pant." *Id.* ¶ 80. But of course, Mr. Pant was not the recipient of any of these services under the

---

[11] "[A] conspiracy to breach a contract is not actionable under Texas law." *Leasehold Expense Recovery, Inc. v. Mothers Work, Inc.*, 331 F.3d 452, 463 (5th Cir. 2003); *see also PharMerica Corp. v. Advanced HCS LLC*, No. 2:17-cv-180-JRG, 2017 WL 7732174, at *6 (E.D. Tex. July 13, 2017.

Engagement Agreement which governed the relationship between the former unnamed Law Firm and the unnamed Client. Of more import, the services provided to the Client were provided pursuant to the Engagement Agreement, by the unnamed Law Firm.

Further, Mr. Hare pleads no facts to support that Mr. Pant was unjustly enriched under any agreement, including the Engagement Agreement. Paragraph 39 of the FAC is the only supporting allegation that Mr. Hare can point to support this claim: "In particular, the 10% contingency fee [what Hare alleges he is entitled to], Mr. Pant believed, would revert to the Client and thus increase the amount Mr. Pant himself was entitled to as licensing agent."  But Mr. Hare points to no factual basis that Pant as an individual (or IP Edge for that matter) would be or was the recipient of any increased amount. FAC ¶39.

"A party may recover under quantum meruit only when there is no express contract covering the services or materials furnished."' *Natural Polymer Int'l Corp. v. Hartz Mountain Corp.*, 426 F. Supp. 3d 300, 311 (E.D. Tex. 2019) (quoting *Vortt Expl. Co. v. Chevron U.S.A., Inc.*, 787 S.AW.2d 942, 944 (Tex. 1990)). Simply put, "[t]here can be no recovery for unjust enrichment 'when a valid express contract covers the subject matter of the parties' dispute.'" *Adidas Am. Inc. v. Shoebacca Ltd.*, No. 3:20-cv-03248-N, 2021 WL 4399745 (N.D. Tex. Sept. 27, 2021) (quoting *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000). This is so "even in cases where the contract was not between parties to the lawsuit because a contract sufficiently govern[s] the subject matter of the claims." *Id.* (citing *ACS Primary Care Physicians S.W., P.A. v. UnitedHealthcare Ins. Co.*, 514 F. Supp. 3d 927 (S.D. Tex. 2021); *Christus Health v. Quality Infusion Care, Inc.*, 359 S.W.3d 719, 724 (Tex. App.—Houston 2011).

Here, Plaintiff has alleged that a contract exists (the Engagement Agreement) between the unnamed Law Firm and unnamed Client regarding legal services provided to the Client, which forecloses any unjust enrichment to Client or Pant. Further, Plaintiff has admitted that his "former firm was contractually obligated to pay him based upon fees received by the Firm in accordance with

specific formulas." FAC ¶ 19 fn. 12.  Therefore, any expectation by Mr. Hare of compensation he was to derive would be provided by his former unnamed Firm (and not Mr. Pant).

If Mr. Hare is alleging that the Exhibit 1 email of the Complaint or the 7/13 Budget is the basis of his equitable claim, it was the unnamed Law Firm that was to potentially provide the services to the unnamed Client, not Mr. Hare. Further, Mr. Pant would not receive the benefit of any service – the unnamed Client would have. Equally important, Mr. Hare has not alleged (and cannot do so) that Mr. Pant expected Mr. Hare to compensation for any service provided – it was the unnamed Law Firm that was to be paid for the services, not Mr. Hare.

Finally, when considering the additional four Agreements alleged by Mr. Hare, it is hard to countenance anything subject to an equitable unjust enrichment claim.  To the contrary, if Mr. Hare were awarded anything from Mr. Pant pursuant to this suit, that award would be an inequitable duplicative payment.

**Mr. Hare cannot establish legal causation as a matter of law**

Mr. Hare's claims sounding in tort (Claims III, IV and V) require him to allege that Mr. Pant's conduct is a proximate cause of Mr. Hare's alleged injuries.  Proximate cause consists of both cause in fact and foreseeability. *Union Pump Co. v. Albritton,* 898 S.W.2d 773, 775 (Tex. 1995). Cause in fact requires proof that the conduct complained of was a "substantial factor in bringing about an injury, and without which the injury would not have occurred." *Ford Motor Co. v. Ledesma,* 242 S.W.3d 32, 46 (Tex. 2007). A plaintiff cannot demonstrate cause in fact where the defendant's conduct is too attenuated from the resulting injuries to the plaintiff to be a substantial factor in bringing about the harm. *IHS Cedars Treatment Center of DeSoto, Texas, Inc. v. Mason,* 143 S.W.3d 794, 799 (Tex. 2004).  The word "substantial is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause…rather than in the so-called 'philosophic sense," which includes every one of the great number of events without which any

19

happening would not have occurred." RESTATEMENT (SECOND) OF TORTS § 431 cmt. a (1965); *see, Union Pump,* 898 S.W.2d at 776. A plaintiff cannot demonstrate cause in fact where the defendants conduct "does no more than furnish the condition that makes the plaintiff's injury possible." *Meador v. Apple, Inc.,* No. 6:15-cv-715, 2016 U.S. Dist. LEXIS 189185, at *9 (E.D. Tex. 2016) (citing *Union Pump,* at 776).

Causation may be considered a question of law when the relationship between the plaintiff's injuries and the defendant's conduct is attenuated or remote. *Ambrosia v. Carter's Shooting Ctr., Inc.,* 20 S.W.3d 262, 266 (Tex. App. –Houston [14th Dist..] 2000, pet. denied).

According to the agreement cited by Mr. Hare, his former anonymous law firm and the former unnamed client were the only parties to the Engagement Agreement. Further, the former unnamed law firm and not Mr. Hare, was contractually delegated the authority to manage and control the litigation.  FAC ¶ 16.  Fatal to Mr. Hare's allegation of proximate cause in Counts III and V, the Amended Complaint demonstrates that Mr. Hare's alleged injury was caused when the former unnamed Client directed an unnamed attorney "to file papers to have Mr. Singh Hare removed from the court's docket in the underlying patent litigation." *Id.* ¶¶ 41-43. While the Amended Complaint is ultimately silent as to how his employment with his former unnamed Law Firm ended, critical to cause in fact, the Amended Complaint alleges that at no point did Mr. Pant ever attempt to terminate Mr. Singh Hare pursuant to the terms of the Engagement Agreement – nor could he since Mr. Pant was a stranger to the Engagement Agreement. *Id.* ¶55.

Even taking the allegations as true, that Mr. Pant did not personally want Mr. Hare to continue as lead counsel for the unnamed Client, Mr. Pant's conduct is of no moment to the Engagement Agreement between the unnamed Law Firm and the unnamed Client.  And any perceived injury by Mr. Hare is of no consequence either:  (1) Mr. Hare had no contractual right to the benefit of the fees collected by the unnamed Law Firm pursuant to the Engagement Agreement; and (2) as expressly

20

quoted, only Mr. Hare's former unnamed Law Firm had the right to "control, manage, supervise, and coordinate the Matters, including any litigations." FAC ¶16.  In other words, because Mr. Hare and Mr. Pant were strangers to the Engagement Agreement, Mr. Hare cannot allege any conduct on the part of Mr. Pant that would be a substantial factor in bringing about the loss of fees that Mr. Hare had no contractual right to collect; nor a contractual right of control that Mr. Hare had no right to exert under the Engagement Agreement.  As a result, Mr. Hare cannot allege any set of facts that establish proximate cause, because the conduct of Mr. Pant in relation to the Engagement Agreement is too attenuated from the alleged injuries to be a substantial factor in bringing about Mr. Hare's alleged harm. *IHS Cedars,* 143 S.W.3d at 799.

As for Mr. Hare's allegation in Count IV related to a potential deal on the "Solar Portfolio," the alleged "loss in millions in legal fees" depends from a "term sheet that expressly designated Mr. Singh Hare's former law firm as lead counsel," and not Mr. Hare. *Id.* ¶ 65.  In other words, there were discussions of a prospective engagement agreement between the former unnamed Client and the former unnamed Law Firm to which Mr. Hare would not have been a party.  Even if Mr. Pant engaged in the conduct alleged, he cannot be a substantial factor in any claim for injury suffered by Mr. Hare for wrongful interference with a prospective contract to which Mr. Hare would have no privity. Because the term sheet would grant rights to his former unnamed Law Firm, and not Mr. Hare, any conduct on the part of Mr. Pant in relation to that potential engagement agreement is too attenuated from the alleged injury suffered by Mr. Hare. As a result, Mr. Hare cannot allege any set of facts in relation to that prospective engagement agreement to establish proximate cause.

### Mr. Hare has no standing

"Every party that comes before a federal court must establish that it has standing to pursue its claims." *Apfa Inc. v. Uatp Mgmt., LLC,* 537 F. Supp. 3d 897, 903 (N.D. Tex. 2021), quoting *Cibolo Waste, Inc. v. City of San Antonio,* 718 F.3d 469, 473 (5th Cir. 2013). Furthermore, a plaintiff must demonstrate

standing for each claim and form of relief. *See Town of Chester v. Laroe Estates, Inc.,* 137 S. Ct. 1645, 1650, 198 L. Ed. 2d 64 (2017). The jurisprudence of standing can be divided into two branches: (1) Article III standing, which enforces the constitutional **case-or-controversy requirement**; and (2) prudential standing, "which embodies **"judicially self-imposed limits on the exercise of federal jurisdiction**." *Capozelli v. Allstate Insurance Company*, No. 2:13-CV-00260-JRG, 2014 WL 786426, at *2 (E.D. Tex. Feb. 25, 2014) (emphasis added); *see also Pelletier v. Victoria Air Conditioning, Ltd.*, No. 18-40390, at *5-6 (5th Cir. July 12, 2019) (emphasis added); *see also Superior MRI Servs. Inc., v. Alliance Healthcare Servs., Inc.,* 778 F.3d 502, 504 (5th Cir. 2015) (stating "[p]rudential standing requirements exist in addition to the immutable requirements of Article III as an integral part of judicial self-government").

Mr. Hare has the "burden of establishing [his] Article III standing to bring this suit." *Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.,* 702 F.3d 794, 800 (5th Cir. 2012). This burden includes plausibly alleging three elements: (1) an injury in fact, (2) causation ("that is fairly traceable to the challenged action of the defendant"), and (3) redressability. *Id.* at 799; *see also Town of Chester,* 137 S. Ct. at 1650. As to the first and second elements, Mr. Hare "must have suffered (or be imminently threatened with suffering) the alleged injury," which "is fairly traceable to the challenged action of the defendant." *Pelletier*, No. 18-40390, at *7, citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014); *Servicios Azucareros de Venezuela, C.A.,* 702 F.3d at 799.

To satisfy the first two elements, Mr. Hare needed to establish that he, personally, was injured by Mr. Pant's alleged conduct.  The agreement and prospective agreements which are the subject of Mr. Hare's claims, neither he nor Mr. Pant were parties to those agreements. Similarly, in his tort claims, Mr. Hare cannot fairly trace any actions of Mr. Pant to his alleged injury. Mr. Hare's tort claims depend on an erroneous foundation alleged throughout his complaint —Mr. Hare's former Law Firm and not Mr. Hare had the authority to manage and control the matters. FAC ¶ 16. Furthermore, it was

22

the Client, and not Mr. Pant, that directed an unnamed attorney to remove Mr. Hare from the matters.

FAC ¶ 41-43. As to the third element, the Court would not be able to provide a remedy to Mr. Hare,

since he has failed to prove an injury caused by the alleged actions of Mr. Pant. As a result, Mr. Hare

fails to satisfy the constitutional standing requirements.

The Supreme Court recognizes prudential standing to encompass the following two principles:

(1) general prohibition against a party raising another person's legal rights; and (2) "the rule barring

adjudication of generalized grievances more appropriately addressed in the representative branches".

*Lexmark Int'l, Inc.*, 572 U.S. at 126.[12]  In general, to establish prudential standing, Mr. Hare "must assert

his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of

third parties." *Superior MRI Servs. Inc.,* 778 F.3d at 504, citing *United States v. Johnson*, 632 F.3d 912, 919-

20 (5th Cir. 2011) (internal quotation marks omitted). In the present case, the alleged "Agreements"

are between the unnamed Client and Mr. Hare's former unnamed Law Firm. Thus, it is Mr. Hare's

former Law Firm that is the party with legal rights and interests to the matter in question, not Mr.

Hare. Mr. Hare fails to meet his burden of establishing his claims as grounded in his own legal rights

and interests, and thus, Mr. Hare fails to satisfy the prudential standing requirement.

The Fifth Circuit recognizes one exception to the prudential standing requirements, but this

exception is a high hurdle. A plaintiff may assert the legal rights or interests of third parties (here, the

Former Law Firm) only "when, [1] **in addition to his...own Article III standing**, the litigant also

has [2] a **close relationship to the third party** such that the **parties' interests are aligned** and [3]

---

[12] In *Lexmark Int'l v. Static Control Components, Inc.,* the Supreme Court addressed the principles of
prudential standing and clarified that the "zone-of-interests" test previously identified in *Elk Grove
Unified Sch. Dist. V. Newdow* is a question of statutory standing rather than prudential standing. *See
Lexmark Int'l*, 572 U.S. at 127 & n.3; *see Elk Grove Unified Sch. Dist.*, 542 U.S. 1, 12, abrogated by
*Lexmark Int'l*, 572 U.S. 118; *see also Superior MRI Servs. V. Alliance Healthcare Servs.*, 778 F.3d 502, 506
(5th Cir. 2015) (stating that "the *Lexmark* Court clarified that the zone-of-interests inquiry is properly
viewed as one of statutory interpretation").

23

there is **some hindrance to the third party's ability to protect his or her own interests**." *Alamo Forensic Servs., LLC v. Bexar Cty.,* 861 Fed. Appx. 564 (5th Cir. 2021) (emphasis added) (internal quotation omitted); *see also Matthews v. LeBlanc,* No. 21-40086, 2022 U.S. App. LEXIS 20602, at *3 n.2 (5th Cir. July 26, 2022); *ESI/Employee Sols., L.P. v. City of Dall.,* 450 F. Supp. 3d 700 (E.D. Tex. 2020). Leaving Mr. Hare's termination by the former Law Firm aside, he has not shown that the former Law Firm had some, let alone *any,* hindrance in protecting its own interests. Since Mr. Hare does not meet all three requirements to the Fifth Circuit's exception, Mr. Hare fails to establish prudential standing. *See ESI/Employee Sols., L.P.,* 450 F. Supp. 3d at 716.

As discussed in detail above and incorporated herein by reference, Mr. Hare cannot establish constitutional nor prudential standing. In his contract and tort claims, Mr. Hare fails to meet his burden of an injury in fact to which he was not a party or in privity, representations upon which he cannot rely, interference with contracts for which he was not a party, prospective business that is not likely, or unjust enrichment for which a written contract governs the subject matter. He cannot trace any injury to any actions of Mr. Pant; thus he has no constitutional standing to sue. Similarly, Mr. Hare fails to meet his burden of demonstrating his legal rights or interests in the matter and also fails to meet the Fifth Circuit's prudential standing exception. Mr. Hare thus also has no prudential standing to sue.

## VI.    CONCLUSION

The FAC is fraught with misdirection, misquotations, and unanswered questions. Mr. Hare has no standing to assert the claims asserted and fails to meet his burden under Rule 12(b)(6). He does not allege: (1) that there was an attorney engagement letter between him personally and the Client (there never was one); (2) that he was a signatory in his own right to the unproduced Funding Agreement that would pay him directly (he was not); (3) that Mr. Pant was a party to the engagement letter, Funding Agreement, 7/13 Budget, or Amended Funding Agreement (he was not); (4) that any

24

cognizable contract existed between Mr. Hare and Mr. Pant (it did not); or (5) that given his lack of any personal interest in the agreements at stake, that Hare had any basis to be defrauded (again, he did not).

Mr. Hare's scatter-shot diatribe in search of a windfall should not be countenanced. Mr. Pant respectfully requests this case be dismissed with prejudice.

Date:  August 31, 2022                                 Respectfully submitted,


                                                       */s/ Greg Love*
                                                       Greg Love
                                                       Texas Bar No. 24013060
                                                       greg@swclaw.com
                                                       Chris J. Zhen
                                                       California Bar No. 275575
                                                       chris@swclaw.com
                                                       **STECKLER WAYNE CHERRY & LOVE, PLLC**
                                                       107 East Main Street
                                                       Henderson, Texas 75652
                                                       Telephone: No.: 903) 212-4444
                                                       Facsimile No.: (903) 392-2267


                                                       Andrew M. Howard
                                                       Texas Bar No. 24059973
                                                       amh@howardlg.com
                                                       Paul T. Beeler
                                                       Texas Bar No. 24095432
                                                       ptb@howardlg.com
                                                       **HOWARD LAW GROUP, PLLC**
                                                       5220 Spring Valley Road, Suite 600
                                                       Dallas, Texas 75254
                                                       214-974-0585 Telephone
                                                       469-645-0166 Facsimile


                                                       ***Attorneys for Defendant Sanjay Pant***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on August 31, 2022, a true and correct copy of the foregoing was electronically filed via the Court's CM/ECF system and served on counsel of record for Plaintiff.

*/s/ Greg Love*
Greg Love

26