THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| Jaspal Singh Hare, | |
| *Plaintiff*, | Civil Action No.: 2:22-cv-00189-JRG-RSP |
| v. | JURY TRIAL DEMANDED |
| Sanjay Pant, | |
| *Defendant*. | |

**PLAINTIFF JASPAL SINGH HARE'S RESPONSE TO
<u>DEFENDANT'S SECOND MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................... 1

II.   BACKGROUND ..................................................................................................... 2
      A.   Brief Summary ............................................................................................... 2
      B.   Mr. Singh Hare's Wrongful Termination ....................................................... 5
      C.   The Motion's Background Section ................................................................. 7

III.  LEGAL STANDARD ............................................................................................ 7
      A.   Rule 12 Motions to Dismiss .......................................................................... 7

IV.   ARGUMENT .......................................................................................................... 8
      A.   Count I – Breach of Contract ......................................................................... 8
      B.   Count II – Fraud............................................................................................. 9
      C.   Count III—Interference with Existing Contractual Relationship ............... 13
      D.   Count IV—Wrongful Interference with Prospective Contractual or Business
           Relations ...................................................................................................... 17
      E.   Count V—Conspiracy .................................................................................. 20
      F.   Count VI—Quantum Meruit / Unjust Enrichment ...................................... 21
      G.   The Motion's Causation Arguments (at 19–20) Lack Merit ....................... 22
      H.   The Motion's Standing Arguments (at 21–24) Lack Merit .......................... 23
      I.   Dismissal is Inappropriate and Leave to Amend Should be Granted .......... 25

V.    CONCLUSION ..................................................................................................... 25

Plaintiff Jaspal Singh Hare ("Plaintiff" or "Mr. Singh Hare") files this Response in opposition to Defendant Sanjay Pant's ("Defendant" or "Mr. Pant") Second Motion to Dismiss (dkt. 11) ("the Motion" or "Mt.") the First Amended Complaint (dkt. 7) ("FAC").

## I.    __INTRODUCTION__[1]

Mr. Singh Hare raised millions of dollars in funding for the Client for the underlying patent litigation. Then he successfully prosecuted the cases. After years of hard work, when it came time to duly pay Mr. Singh Hare, Defendant engaged in a pattern of conduct to sideline and freeze out Mr. Singh Hare. To Mr. Singh Hare's detriment, he did not get a chance to earn the budgeted $1.2M+ in fees, nor was he ever paid the promised 10% contingency fee for which he gave the Client a 25% discount.

The FAC accuses Defendant of breach of contract, fraud, interference with contractual relations, and conspiracy, among other things. The FAC in IRAC style[2] lays out the elements of each count, then applies the facts to each element. Defendant does not duly challenge that a *prima facie* case is pled. Instead, in contravention of the Rule 12 posture, the crux of Defendant's Motion is that somehow the FAC must be dismissed because Mr. Singh Hare is not a explicit or *per se* "party" to the Funding Agreement and Engagement Letter. But, this argument does not follow.

There simply is ***no*** requirement that Mr. Singh Hare must be *per se* party to the agreements. *See, e.g., Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 129 S.Ct. 1896, 1903 (2009) ("Because 'traditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel,' 21 R. Lord, Williston on Contracts § 57:19,

---

[1] This Oppos adopts terms defined in the FAC and in the Motion.
[2] "IRAC style" refers to the legal writing style of issue, rule, application, conclusion as taught in law school.

p. 183 (4th ed. 2001), the Sixth Circuit's holding that nonparties to a contract are categorically barred from § 3 relief was error.").

Fundamentally, it was the intent of the parties to bind Mr. Singh Hare to the Client and the Funder. *See, e.g., Ward v. American Airlines, Inc.*, 498 F. Supp. 3d 909, 921 (N.D. Tex. 2020) ("[T]he question of who is actually bound by an arbitration agreement is ultimately a function of the intent of the parties, as expressed in the terms of the agreement. . . .  Under certain circumstances, principles of contract law and agency may bind a non-signatory to an arbitration agreement." (quotations, citations, and alterations omitted)). The FAC has duly pled that Mr. Singh Hare has interest in underlying agreements with rights to enforce them.  He is a party to the agreements because he *signed* them, *has obligations* under them, and is *owed obligations* under them.  Even if not a party, the FAC pleads he is a third-party beneficiary for instance; estoppel also applies because he relied on the various provisions breached as discussed herein.  These are factual inquiries that must be resolved in Mr. Singh Hare's favor in the Rule 12 context.

Accordingly, the Motion should be denied.  Alternative, leave to amend should be granted.

## II.   **<u>BACKGROUND</u>**

Background is provided in detail in the FAC (dkt. 7).  For brevity, only a brief summary is provided here.

### A.   **Brief Summary**

Mr. Singh Hare is an experience patent litigation attorney.  He was first approached around June of 2019 regarding the underlying patent litigation matter by Defendant.  After about a year of efforts, Mr. Singh Hare successfully secured millions of dollars in non-recourse funding to pursue the matter.  The deal was relatively straightforward, Mr. Singh Hare would be lead counsel and be compensated at his normal rate less a 25% discount, and in consideration for the discount, a 10% contingency fee.  FAC, ¶ 13.  Mr. Singh Hare would be compensated through his former

Firm, who was contractually obligated to pay Mr. Singh Hare according to a specific formula based on collections. FAC, ¶ 19 & fn. 12.

It was *the intent of the parties* to bind Mr. Singh Hare to the Funder and the Client. This is evidenced by the fact that Mr. Singh Hare is explicitly identified as lead counsel in both the Funding Agreement and the Engagement Letter, and *he is a **signatory** to both agreements*. FAC, ¶¶ 14–16. Mr. Singh Hare also had express obligations under the agreements, e.g., to comply with ethical duties, "zealously represent" the Client, and "to not circumvent the economic terms" of the deal. FAC, ¶ 14. The Funding Agreement also expressly states Mr. Singh Hare's representation was *material* (FAC, ¶ 19 & fn. 11) (emphasis added):

> The Parties acknowledge and agree that legal representation of Claimant [(the Client)] in the Dispute and/or the Litigation by Lead Law Firm (and ***Lead Law Firm attorneys*** *that are primarily working on the Dispute and/or the Litigation*) and the limitations provided for disbursements and fees in Section II.A and Appendix 3 are ***material*** to this Agreement.

The Engagement Letter further made a breach of the Funding Agreement a breach of the Engagement Letter (FAC, ¶ 17) (emphasis added):

> Cause includes, without limitation, *material breach by the Client of this Agreement or **any agreement with [the Funder]***.
> . . . .
> Nothing in this section or the preceding section shall limit either parties' remedies *in the event of a breach of this Agreement or **related agreement***.

Contrary to the Motion's piecemeal analysis of the agreements, the agreements must be read collectively to determine the true intent of the parties in the context that the agreements are for personalized legal services, i.e., services that could only be delivered by Mr. Singh Hare.

After the underlying patent case was filed, it proceeded successfully towards trial. An IPR was denied; motions for stays were denied; and all claim construction disputes were resolved

favorably for the Client.  All this was due to Mr. Singh Hare's legal acumen and hard work; he personally did virtually all the work on the underlying case.

Due to the litigation successes, around July 2021, the parties agreed to bring on Co-Counsel to assist with trial.  This did not change Mr. Singh Hare's (nor his former Firm's) compensation nor authority.  Nonetheless, Defendant smelled an opportunity line his pockets.  Defendant attempted to sideline Mr. Singh Hare in breach of the agreements, where during a series of calls on August 4, 2021, he told Mr. Singh Hare to have nothing further to do with the case.   FAC, ¶ 36.  Mr. Singh Hare explained this is a breach of contract on August 6, 2021 (FAC, ¶ 37):

> Gau/Sanjay, the [funding] agreements provide: "As lead counsel, the [Mr. Singh Hare] has authority to ***control, manage, supervise, and coordinate*** the Matters, including any litigations" (I didn't see this in [Co-Counsel's] engagement letter); "Lead Law Firm . . . use all commercially reasonable efforts to (i) ***zealously*** represent Claim . . . through settlement or final judgment"; "*Claimant shall **not** provide any instructions to lead law firms that are inconsistent with the terms of this agreement or any other Transaction Document*." If the client had instructed me not to manage, nor supervise, nor coordinate, it would appear to be a breach. I don't need an apology but I did spend from about 1 am to 5 am yesterday re-going through all the agreements; no more going below the belt or amateur hour.

Defendant further inserted terms of payments in the amount of $100,000 to the entity he controlled, IP Edge and also a $500,000 payment to the Client (of which a substantial portion would go to IP Edge, thus flow to Defendant).  FAC, ¶ 77.f.  Defendant also rewrote substantial portions of Co-Counsel's engagement letter, but he failed to disclose the original Funding Agreement to Co-Counsel, thereby keeping Co-Counsel in the dark as to the control provisions and thus sowing discord in the team to fabricate "cause" for terminating Mr. Singh Hare.  FAC, ¶ 77.e.  Thereafter, Defendant began a strategy to freeze out Mr. Singh Hare, including causing the Client's representative and Co-Counsel to freeze out Mr. Singh Hare.  Defendant's actions sowed discord in, and destroyed, the good working relationship enjoyed by all the parties to the detriment of Mr.

Singh Hare.

Defendant's actions caused substantial harm to Mr. Singh Hare. Defendant's action prevented Mr. Singh Hare for exercising managerial control over the underlying matter. They prevented Mr. Singh Hare from earning the $1.2M+ in fees budgeted for his (and his form Firm's) continued role—fees that were bargained for and expressly funded by the Amended Funding Agreement. Defendant's action also caused the Client to refuse to pay the 10% contingency fee. They also harmed Mr. Singh Hare's professional reputation. This harm flowed directly to Mr. Singh Hare due to the contractual relationship between the parties.

### B.      Mr. Singh Hare's Wrongful Termination[3]

The Motion raises the issue of Mr. Singh Hare's termination by his former Firm, Spencer Fane LLP. Mr. Singh Hare was wrongfully terminated as explained below.

The original Funding Agreement also included a provision providing for a bonus if the IPR was to be denied (referred to as the "IPR Success Fee"). Specifically, that provision provided a bonus of $100,000 to Mr. Singh Hare's former firm. Around August 2021, after the IPR had been denied and other conditions for the bonus had been met, Mr. Singh Hare confirmed with Defendant, the Client, and the Funder that the bonus was payable. Defendant, the Client, and the Funder agreed that the bonus was payable. Mr. Singh Hare then duly invoiced the Client (thru his former Firm) for the bonus amount. The Firm then transferred the funds from its trust account to its working account. Mr. Singh Hare then duly requested that the Firm pay him his contractual share of the bonus according to their contractual agreement (amounting to about 96% of the bonus due to the fact Mr. Singh Hare had done virtually all the work on the underlying matter).

Around the same time, Mr. Singh Hare also requested permission from the Firm's

---

[3] To the extent the facts in this sub-Section or in this response are not pled in the FAC, Mr. Singh Hare could duly plead them in an amended pleading.

management for bereavement and paternity leaves.  Specifically, Mr. Singh Hare's father had passed away from COVID-19, and he desired leave to take his father's ashes back to India to be scattered over the Sutlej River as is his cultural and religious tradition; he also desired paternity leave for the birth of his second child (due around March 2022).  Instead of approving the leaves, the Firm's management then initiated a sham process to terminate Mr. Singh Hare.  Mr. Singh Hare complained of racial discrimination to the Firm's management on September 12, 2021.

Thereafter in apparent retaliation, the Firm disputed without legal basis the amount of the bonus that Mr. Singh Hare is entitled.  Then, on October 4, 2021, the Firm terminated Mr. Singh Hare employment in contravention of racial discrimination laws and the Family Medical Leave Act (FMLA), among other things.  The Firm then paid Mr. Singh Hare approx. $96,000 of the $100,000 IPR Success, which represented Mr. Singh Hare's contractual portion based on hours billed to the matter.

Immediately after terminating Mr. Singh Hare and unbeknown to Mr. Singh Hare, the Firm's management informed the Client that Mr. Singh Hare was embezzling or something similar. Mr. Singh Hare was **NOT** embezzling or anything similar.  Eventually, on October 29, 2021, the Firm's management stated in an email to the Client (emphasis added): "one concern at the time of [the Firm's management's] October 13 message was the $100,000 IPR Success Fee Mr. Hare instructed Spencer Fane to bill [the Client] in September of this year.  After reviewing the relevant engagement and funding agreements, *it appears that this fee was authorized*."  Prior to the October 29th email, Mr. Singh Hare was not aware he was being accused of embezzlement or the like.  Even though Defendant is aware of these circumstance, he continues to raise Mr. Singh Hare's termination in prejudicial fashion to vex and harass Mr. Singh Hare.  *See, e.g.,* dkt. 6 at 7 (Defendant's original motion to dismiss stating, "Defendant will present evidence that the Law

Firm fired Hare for *unethical behavior*, namely a demand from Hare to his former firm's accounting department for an *unauthorized* six-figure payment." (emphasis added)); Mt. at 16 (stating "Hare's 'contract' with his former firm was terminated by that firm based on *malfeasance*." (emphasis added)).

Immediately after termination by the Firm, Mr. Singh Hare engaged the Client and the Funder in discussions to continue to retain Mr. Singh Hare on substantially the same terms.  Both the Client and the Funder agreed.  On October 8, 2021, Mr. Singh Hare then sent the Client a new engagement letter that was substantially identical to the former Engagement Letter.  The Client did not respond to that communication.  Mr. Singh Hare continued to duly perform work for the Client.   Eventually, around November 2021, the Client terminated Mr. Singh Hare's representation.

### C.      The Motion's Background Section

A Rule 12 motion to dismiss, generally, admits the allegations in the complaint.  But, here, Defendant's background section merely attempts to recast facts in a light most favorable to himself in contravention of the Rule 12 posture.   Thus, the Motion's background section should be disregarded in its entirety.

### III.    LEGAL STANDARD

### A.      Rule 12 Motions to Dismiss

A complaint requires only "[a] short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. Proc. 8(a)(2).  "When we review the dismissal of a complaint for failure to state a claim, we *must* accept all well-pleaded facts as *true*, and we view them *in the light most favorable to the plaintiff*."  *McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir.1992) (emphasis added).  "It is well-established that pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers."  *Calhoun v. Hargrove*, 312 F. 3d

730, 733–34 (5th Cir. 2002) (citations and quotations omitted).  "Complaints should be construed liberally in favor of the plaintiff."  *Kaltenbach v. Richards*, 464 F. 3d 524, 527 (5th Cir. 2006).  The burden on a motion to dismiss lies with the moving party.  Baicker-McKee et al., Fᴇᴅ. Cɪᴠ. R. Hᴀɴᴅʙᴏᴏᴋ, 455  (West 2013) (citing *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008), among other cases).

## IV.   <u>ARGUMENT</u>

### A.     **Count I – Breach of Contract**

Count I of the FAC alleges breach of contract, i.e., the 7/17/2019 Agreement.[4]  The FAC duly pleads this agreement is "valid contract" (FAC, ¶ 2).  Simply put, Defendant cannot challenge this allegation supported by a written communication in the Rule 12 context where well-pled allegations are deemed true and evidence is read in a light most favorable to the plaintiff.  Thus, Defendants challenge of Count I must be denied.

Defendant's arguments lack merit.  The cases cited in the Motion (at 10) do not deal with motions to dismiss and are irrelevant here.  In particular, there was a meeting of the minds and manifestation of intent, because Defendant himself transmitted the operative email—showing his assent—to the satisfaction of Mr. Singh Hare.  Defendant appears to dispute these facts, which is improper in the Rule 12 context and fatal to the Motion.

Defendant's lead argument is to emphasize the "no commitment" language present in the written agreement.  But, this must be read in context.  The agreement itself states (emphasis added) "*if* we did use your funder buddy, as a result of *your* efforts, then we would agree to use *your* firm as litigation counsel, *assuming* your firm+funder rates made sense."  The "no commitment" language applies to the scenario where Mr. Singh Hare's funder buddy was not used by the Client.

---

[4] This is attached to the original complaint (dkt. 1) in the this matter as Exhibit 1.

Instead, the Client did *actually* use Mr. Singh Hare's funder buddy because the rates made sense. Because all pre-conditions were satisfied, the "no commitment" language is irrelevant. The essential terms were to use Mr. Singh Hare's services in *good faith* and *deal with him fairly* (as alleged in the FAC, ¶¶ 12 & 47), which Defendant failed to do.

This was not an agreement *to agree*, but a predicate agreement to move forward required to obtain Mr. Singh Hare valuable service to work up the case and obtain funding for the client (all without compensation). Absent this agreement, Mr. Singh Hare would have demanded to be compensated on an hourly basis.

Both Mr. Singh Hare and Defendant are parties to this agreement as their names are on the agreement. The recitation of "your firm" without naming the firm, shows that the intent of the parties was to secure Mr. Singh Hare's services regardless of the firm he was associated with. That is why the law firm is unnamed because it was irrelevant.

To the extent Defendant now claims he lacked authority to bind the underlying Client (Mt. at 10, fn. 9), this further evidences fraud and Defendant's fraudulent intent. Indeed, an agent without authorization is personally liable.

As such, Defendant is liable for breach of contract on this 7/19/2019 Agreement. The Motion as to this Count I should be denied.

**B.    Count II – Fraud**

Count II of the FAC alleges fraud. In IRAC style, the FAC identified the elements of fraud, then lays out the facts supporting finding each element. *See* FAC, ¶¶ 49–55. To summarize, Defendant *misrepresented* to all the parties that sufficient funds were allocated by the Funder in the amended deal as demanded by Mr. Singh Hare and that Mr. Singh Hare had the right to continue to control the matter as a whole; then on Aug. 4, 2021 mere days after inducing Mr. Singh Hare to sign the amended deal, Defendant tried to terminate Mr. Singh Hare outside the contractual

process in order to vitiate the payment terms; all to Mr. Singh Hare's detriment.   The FAC has
sufficient pled fraud.

The Motion does not challenge the sufficiency of the allegations of frauds.  Instead, the
Motion disputes factual issues as to the budget and damages.  This is improper in the Rule 12
context and is fatal to the Motions arguments here.

Defendant's lead argument is that the 7/13 Budget is a "budget," not a "representation."
But, the FAC, ¶ 30  duly pleads that the 7/19 Budget was a *material* representation (emphasis
added):

> The Funder relied on the figures in the 7/13 Budget to compute the
> final funding amounts contained in the Amended Funding
> Agreement.  The Funder then agreed to provide a new funding
> commitment in an amount that funded **all** *the fees* (of Mr. Singh
> Hare, his former firm, and Co-Counsel) disclosed in the 7/13
> Budget.  *Said another way, the final funding amount in the Amended
> Funding Agreement funded **all the legal fees** that both Co-Counsel
> and Mr. Singh Hare felt necessary to properly litigate the case thru
> trial and **demanded in consideration for signing the amended deal***.

The mere labelling of the 7/13 Budget as "budget" is irrelevant.  The parties treated the 7/13 Budget
as a material negotiating demand.  That is, it that was bargained for, consideration given for,[5] and
provided for by the Amended Funding Agreement.  The Motion simply cannot recharacterize a
legally operative negotiating demand that was relied on by all the parties to suit itself.

The Motion also argues that somehow even if the budget constitutes a representation, then
Mr. Singh Hare could not rely on the budget because he was not "a *direct* beneficiary in his own
right."   This argument is also nonsensical.   Mr. Singh Hare would not have signed (and his
signature was required) the Amended Funding Agreement *but for* the inclusion of his fees and

---

[5] In consideration for this smaller portion of the overall budget in the Amended Funding Deal, Mr.
Singh Hare gave up the larger budget that was provided for under the original Funding Agreement
for solely for him and his former firm.

assurances that the case would be sufficiently funded to be properly litigated.  Mr. Singh Hare was damaged because he did not have to sign the amended deal, but instead could have proceeded under the existing Funding Agreement that had sufficient funding to litigate the case thru trial.[6] Further, Mr. Singh Hare was a direct beneficiary, i.e., a substantial portion of the fees paid to Spencer Fane would necessarily have been paid to Mr. Singh Hare.  *See* FAC, ¶ 19, fn. 12 (duly alleging Spencer Fane was contractually obligated to pay him based on fees received).

Regardless, being a *direct* beneficiary (as Defendant uses the term) is not an element of fraud that a plaintiff is required to plead nor prove at trial.  The Motion does not cite any authority in support of some special "direct" beneficiary element for fraud.  Even if it were an element, the FAC pleads that Mr. Singh Hare is an interest holder with the right to enforce the various agreements, e.g., as a third-party beneficiary.  FAC, ¶ 19; *see Basic Capital Mngmt., Inc. v. Dynex Comm., Inc.*, 348 S.W.3d 894, 899–901 (2011) (holding third-party beneficiary can enforce agreement).  Here, the parties clearly intended to compensate Mr. Singh Hare because he was the one intended to do the work.

The Motion here (at 13) again raises the issue of Mr. Singh Hare's wrongful termination by Spencer Fane.  This is irrelevant because that termination occurred in October of 2021 months after the fraud of July/August 2021 and long after Mr. Singh Hare's reputation and relationship with the Client, the Funder, the Co-Counsel had been damaged by Defendant's conduct.  The argument that Mr. Singh Hare has no knowledge of the Firm's billings is also false because Mr. Singh Hare was the attorney in charging of billings for this Client and knows what was and was not billed.  These argument appears designed merely to embarrass and vex Mr. Singh Hare.

---

[6] The amended deal was necessary to increase the funding commitment to cover the larger budget of Co-Counsel whose budget was more expensive than the budget needed for Mr. Singh Hare to litigate the case.

The Motion's second argument is that Defendant lacked "authority to retain [Mr. Singh] Hare" (at 14), which somehow defeats a fraud claim. This does not follow. Authority (at least as implied by the Motion) is not an element of fraud, and the Motion does not cite any legal authority supporting this argument. Regardless, for purposes of this Motion, the Court may rely on the well-pled fact that Defendant was an "agent" of the Client and thus at least had apparent authority by his participation in amendment process. *See, e.g.*, FAC, ¶¶ 11, 29–38 & 53.

Indeed, if Defendant lacked authority, the fraud would be much greater because Defendant never revealed he lacked authority the whole time he was projecting himself as one with authority (and the Client allowed him to do that). If Mr. Singh Hare had known that Defendant (and/or his co-conspirator Mr. Bodepudi) lacked authority, he would never had dealt with them and also instructed the Client, the Funder, and the Co-Counsel that they should have nothing to do with them (at least with respect to the underlying matter). Defendant now implying that he lacked actual authority for his role negotiating the Amended Funding Agreement confirms fraudulent intent, interference, and the other counts pled in the FAC.

The Motion also argues that Mr. Singh Hare could not have relied upon the relevant misrepresentations because a client has the right to terminate counsel. Under Texas law, a client may terminate counsel, but the client must still pay the lawyer. *See Campbell Harrison & Dagley L.L.P. v. Lisa Blue/Baron and Blue*, 843 F. Supp. 2d 673, 686 (N.D. Tex. 2011) ("Where a client discharges an attorney without cause, the attorney can recover either on a contingent fee contract or in *quantum meruit*." (*citing Augustson v. Linea Aerea Nacional-Chile S.A. (LAN-Chile)*, 76 F.3d 658, 662 (5th Cir.1996) and *Mandell and Wright v. Thomas*, 441 S.W.2d 841, 847 (Tex.1969))). The Engagement Letter duly gave the Client the right to terminate counsel. The entire fraud was motivated by Defendant and his coconspirators desires to vitiate the contractual

payment terms in the event of termination.  Thus, this argument lacks merit.

Last, the Motion fails to address the substantial damage to Mr. Singh Hare's professional reputation.  This is another ground for damages alleged in the FAC (¶ 54).  Defendant cannot carry his burden as moving party by wholesale ignoring well-pled facts.

Accordingly, the Motion fails as to Count II.

### C.    Count III—Interference with Existing Contractual Relationship

Count III of the FAC alleges the *tort* of intentional interference with existing contract.  In IRAC style, the FAC identified the elements, then lays out the facts supporting finding each element.  *See* FAC, ¶¶ 49–55.  To summarize, Defendant intentionally interfered with Mr. Singh Hare's contractual rights under the Funding Agreement, Engagement Letter, and his employment agreement.  The FAC pleads that the contracts must be viewed both "individually and in combination."  Said another way, it was the intent of the parties to bind Mr. Singh Hare to the Client and the Funder.  Defendant interfered with that contractual relationship to Mr. Singh Hare's detriment.  This is all that is required, and those well-pled facts cannot be challenged in the Rule 12 context.

The Motion does not attempt to challenge the fact that Mr. Singh Hare has a pled a *prima facia* case.  Instead, the Motion collaterally attacks the pleading.  That challenge lacks merit.

First, the Motion does not acknowledge, much less analyze the contractual relation as a whole.  *See* FAC, ¶ 58 (alleging the agreements are considered "individually and in combination").  That is, it was the intent of the parties to bind Mr. Singh Hare—who is only party with a license to practice law—to the Client and the Funder.  *See, e.g., Ward v. American Airlines, Inc.*, 498 F. Supp. 3d 909, 921 (N.D. Tex. 2020) ("[T]he question of who is actually bound by an arbitration agreement is ultimately a function of the intent of the parties, as expressed in the terms of the agreement." (quotations, citations, and alterations omitted)).  The Funding Agreement expressly

- 13 -

makes clear of this intent by reciting: "**Name of Lead Attorney: *Jaspal S. Hare***" and "The Parties acknowledge and agree that legal representation of Claimant [(the Client)] in the Dispute and/or the Litigation by Lead Law Firm (and ***Lead Law Firm attorneys** that are primarily working on the Dispute and/or the Litigation*) and the limitations provided for disbursements and fees in Section II.A and Appendix 3 are ***material*** to this Agreement."[7]  FAC, ¶¶ 14 & 19 and fn. 11 (emphasis added).  In addition to implied duties (e.g., of good faith and fair dealing), the Funding Agreement imposes contractual obligations on Mr. Singh Hare to comply with "applicable rules of professional conduct" and "zealously represent" the Client.  FAC, ¶ 14.  Likewise, the Engagement Letter expressly states that the Client retains "Jaspal S. Hare acting as lead counsel." FAC, ¶ 16.  Mr. Singh Hare's employment agreement provides that he is entitled to compensation in accordance with a specific formula.  FAC, ¶ 19 & fn. 11.  It is indisputable that the parties intended Mr. Singh Hare personally to be a party to the contractual relationship, when viewed as a whole—that is why Mr. Singh Hare was a required signatory to the agreements.  *See PharmMerica Corp. v. Advanced HCS LLC*, No. 2:17-cv-180-JRG, dkt. 86 at 4 (E.D. Tex. July 13, 2017) ("In interpreting the MOU [agreement], the Court begins with the 'plain language . . . to ascertain the parties' true intent as expressed by the plain language they used.").

Even viewing the contracts individually, Mr. Singh Hare is a party to theses agreements even if not explicitly labelled as a "party."  And, even if not an explicit, *per se* party, he certainly has a right to enforce those agreements under Texas law, e.g., as an intended third-party beneficiary, promissory estoppel, course of dealing, assumption/ratification, continued performance, and equitable estoppel.  *See, e.g., Ward v. American Airlines, Inc.*, 498 F. Supp. 3d

---

[7] The Funding Agreement also limited "disbursements" to being used only to pay lead law firm fees (e.g., Mr. Singh Hare's fees) and other litigation expenses (e.g., experts and vendors).

909, 921 (N.D. Tex. 2020) (finding a non-signatory could enforce a contract under Texas law and noting "traditional principles of state law [] allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." (citations and quotations omitted)); *PharmMerica*, No. 2:17-cv-180-JRG, dkt. 86 at 4–5  ("Such an allegation, combined with the intent expressed in the MOU [agreement] that the Parties would agree to be bound on terms nearly identical to the previous PSAs, is sufficient to allege that a contract existed between the Parties under the established in the PSAs." (*citing Sieber & Calicutt, Inc. v. La Gloria Oil & Gas Co.*, 66 S.W.3d 340, 347 (Tex. App.—Tyler 2001) (reasoning that parties who continued to perform under an expired agreement were bound by an indemnity provision in the original contract) and *Double Diamond, Inc. v. Hilco Elec. Co-op., Inc.*, 127 S.W.3d 260, 267 (Tex. App.—Waco 2003) ("We find no authority . . .  prohibiting parties from impliedly extending an agreement or entering into a new agreement after a written agreement expires.")).

Wholly ignoring and failing to present any analysis of the agreements collectively is fatal the Motion's arguments.  Even taking the contracts individually, the Motion fails to present any coherent analysis why Mr. Singh Hare's status presents a bar to recovery in tort.

Turning more specifically to the Motion's arguments.  The Motion argues that Mr. Singh Hare cannot recover for interference of the Funding Agreement nor the Engagement Letter because he was not a party to those agreements.  This argument is premised on the proposition that only an express party has standing to sue for interference.  But, that is not an element of the interference tort, and the Motion provides no authority for that proposition.  The Motion cites to *N. Texas Opportunity Fund*, but that case involved a shareholder bring an interference count involving a contract of the corporation.  In that case, the court sustained allegations of interference even though

(as it appears from the opinion) that the shareholders would not have been an express party to the underly contract being interfered with.  The Motion also cites no authority or analysis for why the contractual relations is not viewed as a whole, i.e., based on the collective contracts and the intent of the parties.  The Motion simply ignores the fact that the contracts here are for personal legal services that could only be rendered personally by Mr. Singh Hare.  *See* FAC, ¶ 19 & fn. 11 (stating the parties agree legal representation by "Lead Law Firm attorneys that are primarily working on the Dispute and/or the Litigation" and disbursement limitation are ***material***).

Texas recognizes the torts interference with contractual and/or business relationship.  *See Prudential Ins. Co. of Amer. v. Financial Review Services, Inc.*, 29 S.W.3d 74, 77 (2000) (allowing claims of tortious interference with "business and contractual relationships" to proceed).  To the extent there is any perceived infirmity with this Count, Plaintiff should be allowed to amend this count to recite tortious interference with business and/or contractual relationship and business disparagement under Texas law.  *See id.*

Last, the Motion argues that the Court should disregard allegation of interference with Mr. Singh Hare's employment contract.  The Motion's sole argument here is based on introducing a new fact, that the contract is terminable at will.  This is improper in the Rule 12 context.

Further, there simply is no broad rule that a terminable contract cannot be interfered with. If that were the case, it would swallow the entire tort as virtually every contract is terminable.  The cases cited by the Motion do not stand for such a broad proposition.  The Motion does not explain (such as by analogy) how the facts here are analogous to any of the cited cases.  This omission is especially glaring because the underlying holdings of the cases Defendant cites were based on fact-specific inquiries unique to the those cases.  For instance, Defendant's lead case is *Nursery Decal.* That case turned on whether the interference caused a breach of an obligatory contractual

provision.  That case is not analogous to Mr. Singh Hare's case here because Defendant's actions interfered with Mr. Singh Hare's obligatory duty to zealously represent the Client and interfered with obligatory payment terms, among other things.

Here, at best, there are questions of fact that cannot be decided in the Rule 12 context. Thus, the Motion as to Count III should be denied.

### D.    Count IV—Wrongful Interference with Prospective Contractual or Business Relations

Count IV of the FAC alleges wrongful interference with prospective contractual or business relations.  The FAC in IRAC style identifies the elements of this tort, then lays out the factual support for finding each element.  *See* FAC, ¶¶ 64–70.  To summarize, the parties reached, in material aspects, an agreement as to a second deal (similar to the first one described above), the Solar Portfolio.  This deal is evidence by an exchange of term sheets and a course of dealing.  FAC, ¶ 65.  That deal contemplated Mr. Singh Hare to act as lead counsel and earn millions in fees. FAC, ¶ 65.  Defendant's conduct blew up this deal in spite of the fact that Defendant was warned that his freezing out of Mr. Singh Hare would blow up the deal: "Sanjay, happy Friday.  If [the Solar Portfolio] deal crashes and burns, I won't be [] able to meaningfully help if y'all are not talking to me." FAC, ¶¶ 68–69.  That is sufficient.

The Motion's arguments lack merit.  First, the Motion's lead argument is that "[Mr. Singh] Hare does not allege a 'reasonable possibility' or likelihood that a future contract would have arisen between himself and the Client."  But, the FAC alleges in no uncertain terms that there would have been a contractual relationship between the Client and Mr. Singh Hare based on the term sheets exchanged by the parties.  Those binding terms sheets, along with a course of dealing between the parties, show agreement on all material terms.

There simply is not a legal requirement for this tort that the contractual or business

relationship be based on a single contract directly between the Client and Mr. Singh Hare.  Further, there is no requirement for 100% certainty.  *See Santander Consumer USA, Inc. v. Zeigler Chrysler Dodge Jeep Downers Grove, LLC*, No. 3:16-cv-3310-B, 2017 WL 272998, *16 (N.D. Tex. June 26, 2017) ("It need not be absolutely certain that the prospective contract would have been made were it not for such interference.  A reasonable assurance thereof in view of all the circumstances is generally sufficient." (quotations and citations omitted)).  Even the *Santander* case (cited approvingly) by Defendant notes that the only requirement is that there be a "a future business relationship," an explicit contractual relationship is not required.  The future relationship here was not speculative, but evidenced by binding term sheets showing agreement on the material terms and a course of dealing among the parties.  FAC, ¶ 65.  Such is sufficient.  *See id.*  Defendant simply cannot contest these allegations in the Rule 12 context.

Second, Defendant again raises the issue of Mr. Singh's Hare wrongful termination by Spencer Fane.  This is irrelevant because that termination occurred in October 2021 months after the interference began in July/August 2021 and long after Mr. Singh Hare's reputation and relationship with the Client, the Funder, the Co-Counsel had been tarnished by Defendant's conduct.  Had Defendant not been interfering and damaging Mr. Singh Hare's reputation, Mr. Singh Hare would have continued to enjoy a good working relation with the Client and the Funder who would have been willing to continue the engagement with Mr. Singh Hare either personally or through his new law firm.[8]  Any acrimony in the relationship stemmed from Defendant's own conduct, e.g., destroying the managerial chain of command by trying to sideline Mr. Singh Hare.  Raising Mr. Singh Hare's termination appears designed merely to embarrass and vex Mr. Singh

---

[8] It's noteworthy that the Funding Agreement (and sample funding agreement provided by the Funder) contemplated lead counsel changing firms and included express provisions allowing for the seamless transfer of a funding agreement to a new firm.

Hare.

Third, the Motion argues that the FAC fails to allege an independent tortious or unlawful act.  But the Motion provides no analysis of what is actually presented in the FAC.  For instance, the FAC, ¶ 66 alleges:

> *Second*, Mr. Pant committed an independently tortious or unlawful act that was a substantial factor in preventing the contractual or business relationship from occurring.  As described above, Mr. Pant's conduct constituted a breach of contract, fraud, and interference with an existing contract.  For instance, Mr. Pant's instructions during the August 4th teleconferences (i.e., that Mr. Singh Hare should have nothing further to do with this Solar Portfolio as well as others) was also an independent breach of contract as the parties had formed an agreement in principle based on the term sheets and a course of dealing.  Mr. Pant also instructed and/or induced the Client to also begin freezing-out Mr. Singh Hare in breach of contractual and other duties (e.g., the Client's representative cancelled and never rescheduled a meeting with Mr. Singh Hare that had been scheduled for August 8, 2021 precisely to discuss Mr. Pant's interference).  Mr. Pant also informed the Funder's representative that he would no longer work with Mr. Singh Hare, thereby casting a shadow over the entire legal team's ability to operate as a *team* and to litigate the case successfully.

To the extent not clear from the above quoted paragraph, Defendant's instructions that Mr. Singh Hare should have nothing to do with the case was a breach provisions in the Funding Agreement requiring Mr. Singh Hare to zealously represent the Client.  Defendant freezing out Mr. Singh Hare and failing to negotiate was also in breach of the *good faith* and *fair dealing* requirements germane to all contracts.  Disparagement is also a tortious act.  Self-dealing (e.g., by Defendant's inclusion of provisions for payment to IP Edge) is wrongful and unlawful.  These allegations are sufficient.  *See Santander Consumer USA, Inc. v. Zeigler Chrysler Dodge Jeep Downers Grove, LLC*, No. 3:16-cv-3310-B, 2017 WL 272998, *16 (N.D. Tex. June 26, 2017) ("Independently tortious does not mean that the plaintiff must be able to prove an independent tort; rather, a plaintiff must prove that the defendant's conduct would be actionable under a recognized

tort." (citations and quotations omitted)).

Defendant cannot carry his burden as moving party by wholesale ignoring well-pled facts. The Motion as to this Count IV should be denied.

### E.      Count V—Conspiracy

Count V of the FAC alleges conspiracy, generally, "Mr. Pant entered into a conspiracy with at least Mr. Bodepudi to unlawfully try to fire Mr. Singh Hare before a big payday to increase payments to themselves."   FAC, ¶ 72.   The FAC in IRAC style identifies the elements of conspiracy and in detail lays out factual support for finding each element.   Conspiracy is unlawful precisely to punish a corrupt individual from spreading their corruption others.   That is the case here.

The Motion provides no analysis of any element that Defendant argues is missing.   Instead, the Motion falsely asserts the "only substantive difference between the allegations previously made . . . [is the inclusion] of Gau Bodepudi."      This is false because the FAC analyzes the conduct in detail in context of the tort of conspiracy.   *See* FAC, ¶¶ 71–78.   The Motion fails to analyze the detailed allegations described in the FAC.

For instance, the Motion does not analyze the fact Defendant attempted to create friction within the team by failing to inform Co-Counsel of the management and control provisions; thereby Defendant engaged in an effort to fabricate "cause" to terminate Mr. Singh Hare.   *See* FAC, ¶ 77.e.   Nor does the Motion analyze Defendant's actions to induce the Client to begin freezing-out Mr. Singh Hare in violation of the Client legal and contractual duties to keep Mr. Singh Hare as counsel of record fully informed.   FAC, ¶ 77.c.   Nor does the Motion analyze that Defendant engaged in the conspiratorial actions precisely to vitiate the contractual payment in the event of termination, i.e., that the client would have to pay the reasonable value of the 10% contingency fee (or double the value of the 25% discount); had Defendant and the Client merely

terminated Mr. Singh Hare pursuant terms of the Engagement Letter this mess could have been avoided.  *See* FAC, ¶ 77.d.  Nor does the Motion analyze allegations of self-dealing (e.g., by including provisions for payments to IP Edge), which is another motivation for Defendant to sideline Mr. Singh Hare (who viewed such terms unfavorably).  *See* FAC, ¶ 77.f.

Defendant cannot carry its burden by simply handwaving over the allegations in the Complaint.  The Motion as to this Count V should be denied.

### F.      Count VI—Quantum Meruit / Unjust Enrichment

The Count VI of the FAC asserts "[i]n addition or *in the alternative*" quantum meruit and unjust enrichment.  Mr. Singh Hare provided valuable services for which was compensated at a 25% discounted rate and was never paid the 10% contingency.  He also provided valuable services working up the Solar Portfolio, for which he was not compensated.  To the extent there is an imperfection in the contractual relationship—an issue Defendant flouts throughout his Motion— Mr. Singh Hare is entitled to recover in the alternative under quantum meruit and unjust enrichment.  This Count is duly pled.

The Motion (at 17–18) argues that Defendant personally was not the recipient of services under the Engagement Letter.  But this argument is misleading.  The FAC duly alleges that Defendant is the managing member of IP Edge and that IP Edge was paid based on payments to the Client.  FAC, ¶¶ 9, 11, 13 & fn. 8.  Further alleged, Defendant included hundreds of thousands of payments to IP Edge in the Amended Funding Agreement and Solar Portfolio deal.  FAC, ¶¶ 31 & 77.f.  As managing member of IP Edge, these payments would naturally flow to Defendant.  Thus, Defendant did personally benefit.  Quantum meruit and unjust enrichment are specifically for cases were there is an imperfection in a contract claim.  Thus this Count is properly pled in the alternative.

The Motion (at 18) further argues because the FAC alleges the existence of a contractual

relationship that that forecloses this Count.  But a complaint is allowed to plead in the alternative. *See, e.g., PharmMerica*, No. 2:17-cv-180-JRG, dkt. 86 at 7–8 (sustaining unjust enrichment argument *in the alternative*, noting "either a contract governed the relationship between the Parties and Defendants failed to honor that contract . . . or if the Parties were, in fact, operating without a contractual basis between them, then Defendants unjustly benefited from services provided by Plaintiffs.")  On the other hand, Defendant is not allowed to argue to the Court two entirely inconsistent positions: (1) that no contractual relation existed for Counts I–V; versus (2) there is a contractual relation for Count VI.

The Motion (at 19) further argues that only Mr. Singh Hare's former firm or another firm is entitled to the relief of this Count.  But here, quantum meruit and unjust enrichment are particularly applicable due to the unique situation surrounding Mr. Singh Hare's wrongful termination.  Spencer Fane does not have an incentive to enforce the contract (as it is entitled only *de minimis* portion of any contingency fee).  It would inequitable for Defendant to gain a windfall from another's misfortunate situation, especially when Defendant's tortious conduct began months before the misfortunate situation.

Last, Mr. Singh Hare is not seeking duplicative payment but only the payments contemplated under the agreements but never received by Mr. Sing Hare that he would be entitled if his former Firm had been duly paid (e.g., his portion of the 10% contingency fee).

**G.     The Motion's Causation Arguments (at 19–20) Lack Merit**

The Motion's causation arguments (at 19–20) make little to no sense and have been largely addressed above.  Nonetheless, Mr. Singh Hare attempts to address them.

The Motion (at 20) appears to attempt to argue that the Client's termination of Mr. Singh Hare around November 2021 was the cause of all of Mr. Singh Hare's injury.  This argument simply ignores the fact that Defendant's action of telling Mr. Singh Hare to step aside, then

- 22 -

freezing out Mr. Singh Hare, and inducing the Client and others to do the same, was the root cause of the eventual termination.  The Client's ultimate termination of Mr. Singh Hare's representation was a consequence of Defendant's conduct.  Defendant's argument at best is a factual argument subject to dispute.  In the Rule 12 context, where the evidence must be read in a light most favorable to plaintiff, it must be decided in Mr. Singh Hare's favor.

The Motion (at 20–21) also repeats argument that Mr. Singh Hare and Defendant's status as non-parties cuts off causation.  But this argument ignores the fact that the contract relationship, based on the intent of the parties, was to bind Mr. Singh Hare personally to the Client and Funder. Defendant actions directly caused Mr. Singh Hare to be frozen out and unable to earn at least a substantial portion of the budgeted 1.2M+ in fees and caused the Client to eventually not pay the 10% contingency.  Defendant cannot contest these fact in the Rule 12 context.

The Motion (at 21) also repeats arguments that a lack of privity prevents recovery under Count IV related to the Solar Portfolio deal.  Again, the intent of the parties governs, that is, the parties intended to employ Mr. Singh Hare; this is the only logical reading as a law firm does *not* possess a license to practice law.

Accordingly, this section of the Motion lacks merit.

## H.      The Motion's Standing Arguments (at 21–24) Lack Merit

The Motion (at 22) argues that the tort claims "depend on an erroneous foundation . . . [that] Mr. Hare's former Law Firm and not Mr. Hare had the authority to manage and control matters."  This assertion is incorrect.  The Engagement Letter explicitly identifies Mr. Singh Hare as lead counsel and that the Firm had authority to manage the matter.  Since a law firm (a fictious entity) cannot manage anything except through individual agents, the plain reading of the Engagement Letter is that Mr. Singh Hare had the authority to manage within the Firm.  If not, who else would?

- 23 -

The Motion (at 23) also argues that Mr. Singh Hare is asserting the Firm's legal rights not his own.  This is incorrect because Mr. Singh Hare has duly pled that he is an interest holder with right to enforce the Engagement Letter (e.g., as a third-party beneficiary as discussed *supra*).  It is simply incorrect that only *per se*, explicit parties may enforce a contract.  *See, e.g., Ward*, 498 F. Supp. 3d at 921 ("Because traditional principles of state law allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel . . . ." (quotations and citations omitted)).

Furthermore, in the alternative to the extent there is any perceive infirmity in standing, Mr. Singh Hare's unique situation satisfies the requirements for third-party standing.  *See ESI/Employee Sols., L.P. v. City of Dallas*, 450 F. Supp. 3d 700, 716 (E.D. Tex. 2020) (third-party standing requires a close relationship, alignment of interests, and hinderance).  Mr. Singh Hare has a close relationship with his former Firm; he is named as lead counsel and handled the matter at the firm.  The Firm and Mr. Singh Hare's interests are aligned, as both parties would stand to benefit from financial recovery.  However, the Firm due to only having a *de minimis* interest in any recover (as Mr. Singh Hare is owned substantially all of the 10% contingency) has little to no incentive to enforce Mr. Singh Hare's or their own rights; the Firm also has little interest in asserting its right also because the Firm's management wrongfully terminate Mr. Singh Hare.  This is sufficient.  *See id.* at 716–17 ("Here, because the City has offered no evidence to contest the Employer-Plaintiffs' third-party standing, the City has made a 'facial' attack on standing.  A facial attack on the complaint requires the court merely to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." (citations and quotations omitted)).

Accordingly, this section of the Motion lacks merit.

**I.      Dismissal is Inappropriate and Leave to Amend Should be Granted**

"Leave to amend should be freely given when justice so requires and should be granted absent some justification for refusal." *Adidas Am., Inc. v. Shoebacca Ltd.*, No. 3:30-cv-03248-N, *11  (N.D. Tex. 2021) (citations and quotations omitted).  When a plaintiff's complaint fails to state a claim, courts generally give the plaintiff the chance to amend the complaint before dismissing the claims.  *Id.*

Here, leave to amend should be freely given in light of this Court's guidance on the various issues present in the Motion.

**V.      CONCLUSION**

For the foregoing reasons, the Motion to dismiss should be denied.  In the unlikely event the Court considers granting Defendant's motion or a portion thereof, Mr. Singh Hare requests leave to amend.

DATED September 28, 2022.                                       Respectfully submitted,

                                                                                   */s/ Jaspal Singh Hare*
                                                                      By:_____

                                                                      **Jaspal Singh Hare**

**CERTIFICATE OF SERVICE**

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served on Wednesday, September 28, 2022 with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ Jaspal Singh Hare*
Jaspal Singh Hare