UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| JASPAL SINGH HARE, | § § § § § § § § § § | |
| Plaintiff, | | |
| v. | | CASE NO. 2:22-CV-00189 |
| SANJAY PANT, | | |
| Defendant. | | |

**DEFENDANT'S REPLY IN SUPPORT**
**OF HIS SECOND MOTION TO DISMISS**

## I.      INTRODUCTION

An essential element of each of Mr. Hare's claims requires the existence of a valid and enforceable contract. Yet Hare has deprived the Court the ability to review those contracts. Worse, Mr. Hare's arguments revert to his previous attempts to insert himself in the place of his former unnamed Law Firm with respect to the Engagement Agreement (as well as the other alleged agreements – collectively "Litigation Agreements). Regardless, the FAC still reveals that Mr. Hare was *not* the party engaged by the Client nor situated in such a way to entitle him to fees directly from the Client, and therefore no standing in relation to any claim for attorney fees under the Litigation Agreements.

Even taking the partial disclosure of the language of the Litigation Agreements as true, Mr. Hare's First Amended Complaint ("FAC") suffers from multiple fatal flaws which flow from the same crux: neither Mr. Hare nor Mr. Pant are parties to the underlying agreements asserted in the FAC. By the terms of each partially revealed agreement, neither Mr. Hare nor Mr. Pant as individuals have any enforceable contractual rights. Although the Response makes a vague reference to interference with Mr. Hare's employment agreement with the former Law Firm, there are no specific factual allegations in the FAC which allege how Mr. Pant could have interfered with Mr. Hare's employment with his former Law Firm. More importantly, the Response claims that Mr. Hare was terminated by the Law Firm via a "sham process" and that Mr. Hare has claimed racial discrimination in his termination.

Despite Plaintiff's best and most creative arguments, Mr. Hare by the express allegations in the FAC was never contractually entitled to fees made payable directly to him pursuant to any alleged Litigation Agreement. Any harm for which Mr. Hare could possibly assert a valid cause of action has one single causal connection – Mr. Hare's former unnamed Law Firm - not Mr. Pant.  As alleged, the bargained for exchange central to all of Mr. Hare's claims (*i.e.,* attorney's fees due the Law Firm in exchange for legal representation by the Law Firm) involved a point-to-point nexus between the unnamed Client, unnamed

Law Firm and unnamed Funder.[1] Mr. Hare as an individual had no seat at the agreed upon table, and no express right as a third-party beneficiary – a black letter requirement under Texas law. Because of this, Mr. Hare cannot (and will never be able to) allege any set of facts that establish causation or standing as a matter of law under the claims pleaded.

## II.   FACTUAL BACKGROUND.

Plaintiff's Response reveals further factual background that proves to be self-defeating. According to Hare, he was employed by his former Law Firm, who was "contractually obligated to pay him based on fees received by the Firm in accordance with specific formulas." FAC, fn. 12. Mr. Hare "duly requested that the Firm pay him his contractual share of the bonus according to their contractual agreement (amounting to about 96% of the bonus...) …." Pl.'s Resp. at 5. (Dkt 21). This request belies the most fatal flaw in Mr. Hare's claims – any responsibility to pay Hare any sum is a transaction between Hare and the former Law Firm. And not between Mr. Hare and Mr. Pant – or any other party for that matter. Mr. Hare admits to only seeking "the payments contemplated under the agreements … that he would be entitled *if his former Firm had been duly paid*...." Pl.'s Resp. at 22 (emphasis added). Furthermore, the Law Firm (and not Mr. Pant) "*was contractually obligated to pay him* based on fees received by the [Law] Firm in accordance with specific formulas." FAC, fn. 12 (emphasis added).

Nor is there any allegation that the former Law Firm refused to pay Hare or terminated him because of Mr. Pant. In fact, Plaintiff Hare claims that his termination from the unnamed Law Firm occurred in October 2021 as part of a "sham process" initiated by the Law Firm to apparently conceal racial discrimination, a claim which he is presently pursuing. Pl.'s Resp. at 6; Pl.'s Resp. at 5-6. Mr. Hare still cannot reconcile the FAC causes of action with his allegations that none of the Litigation Agreements were executed by him or Mr. Pant in either's respective personal capacity. The parties to these agreements are Client, the unnamed former Law Firm, Co-Counsel, and/or Funder. FAC ¶¶ 14-16, 25, 26, 57-58, 63. Any

---

[1] The entire relationship chain depended upon the Engagement Letter which allowed the former unnamed Law Firm to be terminated without cause.

agreement or engagement between Client, Law Firm, Co-Counsel, and/or Funder was between parties independent and separate from Mr. Pant and Mr. Hare.

### III.     ARGUMENT

**A.  Mr. Hare cannot state a claim for breach of contract.**

Despite the express allegations in the FAC, Mr. Hare continues to place himself in the shoes of the Law Firm with respect to the Litigation Agreements, even resorting to calling the former Law Firm a "fictitious entity." Pl.'s Resp. at 23. Mr. Hare emphasizes that "the law firm [*former* Law Firm] is unnamed because it was irrelevant" and that "[t]he recitation of 'your firm' without naming the firm, shows that the intent of the parties was to secure Mr. Singh Hare's services regardless of the firm he was associated with." Pl.'s Resp. at 9. However, Mr. Hare points to no actual expression of the intent to disregard parties to the Litigation Agreements. Nor can he disregard the allegation that he was employed by the Law Firm during the relevant time periods under the Litigation Agreements. Regardless, Mr. Hare fails to allege whether his employment agreement with the Law Firm allowed Mr. Hare to take an opportunity from the Law Firm for himself. And of course, the FAC does not include a copy of his employment agreement with the Law Firm.

Mr. Hare provides no legal support for the notion that the Court view the alleged contracts 'individually and in combination' or even how this could be performed without the actual agreements. *See* Pl.'s Response at 13. Ironically, Mr. Hare continues to implore the Court to view the alleged agreements as a whole yet deprives the Court from viewing those agreements. *See* Pl.'s Resp. at 16.

Finally, Mr. Hare's arguments require the court to perform contract construction to determine the parties' intentions. Without the agreements this cannot be performed. *See United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, Loc. 13-423 v. Valero Servs., Inc.,* No. 1:12-CV-113, 2013 WL 588933, at *6 (E.D. Tex. Feb. 13, 2013) (interpreting Texas contract law as "[w]hen construing a contract, the intention of the parties is to be gathered from the instrument as a whole" and "[t]he court is bound to read all parts of a contract together to ascertain the agreement of the parties"); *see also Nokia of Am. Corp. v. Oyster Optics, LLC,* No. 2:18-CV-00391-JRG, 2021 WL 465428, at *3 (E.D. Tex. Feb. 9, 2021) (holding, "Under Texas law, whether a contract is ambiguous is question of law for the

Court to be decided by looking at the contract as a whole"). To be sure, if portions did support Mr. Hare, they would have been included in his second attempt at alleging sufficient facts.

Ultimately, Mr. Hare cannot show: (1) the existence of a contract with Pant; (2) to which he was a party or had rights; (3) that was breached by Pant; or (4) caused him injury as a result of Mr. Pant's breach. His Response made no valid attempt to show the contrary.

### B. Mr. Hare cannot allege breach of the Litigation Agreements via third-party beneficiary status.

Mr. Hare asserts a third-party beneficiary argument based on a snippet of general case law from *Basic Capital Mngmt.*, but this case completely eviscerates Hare's claim as third-party beneficiary. The Supreme Court of Texas summarized Texas law regarding third-party beneficiaries:

> "A third party may recover on a contract made between other parties only if the parties intended to secure some benefit to that third party, **and only if the contracting parties entered into the contract directly for the third party's benefit.**"

*Basic Capital Mngmt. v. Dynex Comm., Inc.,* 348 S.W.3d 894, 900 (Tex. 2011) (emphasis added). The agreement must "clearly and fully spell[ ] out the benefit to" the alleged beneficiary. *Basic Capital,* 348 S.W.3d at 901. The benefits granted by the alleged agreements in the case at issue are (a) to the Law Firm (who would be receiving fees); and (b) the Client (who would be receiving legal services). Like the parties in *Basic Capital*, the Law Firm and Client could have "prevented any doubt about their intentions by expressly stating in the [agreement] that it was to benefit [another party]" – here, Mr. Hare. *Id,* at 901. But speculation on the parties' intentions is not enough. *Id.* The court also made clear that "as a general proposition, a corporate parent is not a third-party beneficiary of its subsidiary's contract merely by virtue of their relationship." *Id.* As such, Hare by virtue of his relationship to the Law Firm is not a third-party beneficiary. Because there is no express provision of Hare as a third-party beneficiary under the Litigation Agreement to receive fees, and actual allegations to the contrary, this claim must fail. FAC, fn. 25.

### C. Mr. Hare cannot allege fraud.

Even assuming Mr. Hare is a party (or third-party beneficiary) to any Litigation Agreement, Mr. Hare's allegations demonstrate no fraud because, Mr. Hare has pleaded no contractual language establishing

Mr. Pant as having authority or agency over any Litigation Agreement or party. To the contrary, even though Mr. Hare claims that he himself had been granted by the Client "express contractual authority to manage and control" the express language of the contract as pleaded shows otherwise – the Law Firm had this authority.[2]

Second, Mr. Hare's pleaded facts are contrary to fraud. Hare alleges that "[o]n November 19, 2019, the term sheet was fully executed," and that "[t]he deal closed around June of 2020 with the signing of a formal funding agreement." FAC ¶ 14. Also alleged: "the Funder's representative distributed a draft amendment document to the Funding Agreement," and "Mr. Pant *distributed to the team* a draft engagement letter between Co-Counsel and the Client." FAC ¶ 26 (emphasis added). Mr. Hare defined "the team" as "consisting of Mr. Singh Hare, the Funder's representative, the Client's representative, local counsel, and Mr. Pant, among others...." FAC ¶ 25. Mr. Hare even acknowledges that he did not object to Co-Counsel's inclusion on the litigation team. FAC ¶ 26. Thus, as Mr. Hare had full access to funding agreement drafts and term sheets through the Law Firm, Hare could not have relied on so-called misrepresentations for the allocation of sufficient funds.

The logic seems to be that because Mr. Hare ultimately was withdrawn from the case by the Client, and fired by the former Law Firm, that representations related to funding were somehow untrue, or in the worst instance alleged, that payment intended to Mr. Hare was diverted to Mr. Pant. But the alleged facts demonstrate that neither occurred because the Law Firm had the contractual right to attorney fees, and the Client contracted with the Law Firm (and Co-Counsel) for legal representation – not Mr. Hare individually. FAC, ¶ 17.

Mr. Hare also fails to meet the heightened pleading requirements of Rule 9(b). *See* Fed. R. of Civ. Proc. 9(b). "Rule 9(b) provides that a party 'alleging fraud or mistake…must state with particularity the circumstances constituting fraud or mistake." *United States v. Team Fin., L.L.C.,* No. 2:16-CV-00432-JRG,

---

[2] Compare paragraph 28, footnote 18, to paragraph 16 – "*the Firm* has authority to control, manage, supervise, and coordinate the Matters, including any litigations."(emphasis added).

2019 WL 3943958 (E.D. Tex. Aug. 21, 2019) (citing Fed. R. Civ. P. 9(b)). This Court recognizes that the "Fifth Circuit applies Rule 9(b) with bite and without apology," and the Court "requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Id.* (internal quotations omitted) (quoting *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009)). The Court also requires a plaintiff to "plead with particularity the circumstances constituting the fraud – *i.e.*, the who, what, where, when, and how." *Id.* Mr. Hare's arguments do not address this heightened pleading standard. Mr. Hare argues that "Defendant was an 'agent' of the Client and thus at least had apparent authority by his participation in [the] amendment process." Pl.'s Resp. at 12. But again, Mr. Hare misses the point: his allegations in the FAC contain no set of facts to demonstrate Mr. Pant did (or did not have) apparent authority to enter the bargained-for-exchange of attorney's fees for legal representation on behalf of the Client. On the contrary, the bargained-for-exchange demonstrated by the FAC shows this authority solely rested between the parties to the agreement – the Law Firm and the Client. FAC ¶ 16. More importantly, neither Mr. Hare nor Mr. Pant were contractually entitled to attorney's fees, nor legal services that arose from the agreement. FAC ¶¶ 14, 17, fn. 12.

The inescapable conclusion then is this: Mr. Hare has not and cannot allege a *prima facie* case of a single element of fraud against Mr. Pant. Further, there is simply no specific allegation upon which Mr. Hare can satisfy the requirements of Rule 9(b) of the Federal Rules of Civil Procedure.

### D. Mr. Hare cannot allege intentional interference with an existing contract.

Even though Mr. Hare was not a party or beneficiary to any Litigation Agreement, Mr. Hare doggedly argues that the parties intended to bind him personally to the Litigation Agreements. Mr. Hare cites the *Ward* case for support. However according to *Ward*, "[w]ho is actually bound...is [ultimately] a function of the intent of the parties, as **expressed in the terms of the agreement**." *Ward v American Airlines,* 498 F. Supp. 3d. 909, 921 (ND Tex 2020)(emphasis added). The mere fact that the alleged Engagement Letter names Mr. Hare as a representative for the Law Firm with certain responsibilities does not entitle him to insert himself as a party, or claim direct payment from the Client under any agreement.

In fact, Hare admits the Law Firm was intended to receive payment from the Client – not Mr. Hare. FAC, fn. 25.  The fees earned or potentially to be earned were to be paid directly to the Law Firm, not Hare.

Finally, any claim that Mr. Pant interfered with Hare's Employment Agreement or that the former Law Firm refused to pay Hare because of Mr. Pant must fail.  Although there is a vague reference to the Employment agreement as part of the "combination" of agreements, Mr. Hare admits that his termination from the unnamed Law Firm occurred in October 2021 as part of a "sham process" initiated by the Law Firm apparently to conceal racial discrimination, a claim which he is presently pursuing. Pl.'s Resp. at 5-6. Crucially, Mr. Hare does not allege Mr. Pant was the legal cause of his termination from the unnamed Law Firm.

**E. Mr. Hare cannot allege wrongful interference with prospective contractual or business relations.**

Hare's allegations based on a future "second deal" (a/k/a the "Solar Portfolio") also must fail. Pl.'s Resp. at 17. "To establish tortious interference with prospective contract, one must first show ***more than speculation or the bare possibility*** that a plaintiff would have entered into a future business relationship." *Santander Consumer USA, Inc.,* No. 3:16-CV-3310-B, 2017 WL 2729998, at *9 (emphasis added). Leaving aside that the final draft term sheet is excluded from Hare's FAC, his allegations show that the "second deal" would have been wholly contingent upon a term sheet revised multiple times that expressly designates the Law Firm as lead counsel.[3] FAC, ¶ 65.  More fatal is the failure of Mr. Hare's causation allegations. Mr. Hare has revealed for the first time, that any direct interference between the Client and Mr. Hare occurred not by Mr. Pant's doing, but by the Law Firm's communication to the Client of Mr. Hare's termination from the Law Firm due to perceived embezzlement. *See* Pl.'s Resp. at 6.

**F. There is no legally cognizable conspiracy.**

---

[3] Mr. Hare also failed to allege that he individually would have replaced the Law Firm in any future potential agreement between Client and the Law Firm. In fact, the opposite has been revealed: he did attempt to replace himself for the Law Firm, but the Client did not respond to Mr. Hare's enticements.  Pl.'s Resp. at 7.

Because Mr. Hare's underlying tort claims fail, his conspiracy claim does as well. In addition, Mr. Hare's conspiracy claims primarily revolve around the allegation that "Mr. Pant entered into a conspiracy with at least Mr. Bodepudi to unlawfully try to fire Mr. Singh Hare before a big payday to increase payments to themselves." Pl.'s Resp. at 19, citing FAC, ¶ 72 (internal quotations omitted). The complaint fails to allege how Pant conspired with the only party that could terminate Hare – the Law Firm. Nor is there any specific allegation on how the so-called conspiracy resulted in payments to the Law Firm were redirected to Mr. Pant individually. Furthermore, the Complaint does not provide a connection between Mr. Pant's alleged conduct and any allegation that the Law Firm did not receive its payments. Instead, there remains a fatal disconnect between the conspiracy allegation that mirrors the gap in Mr. Hare's other causes of action: Mr. Hare is not a party to any alleged agreement, nor situated in such a way to entitle him to fees directly from the Client. Thus, any claim for damages related to the Litigation Agreements between the Law Firm, the Client and Funder cannot be awarded to Mr. Hare individually.

### G. Mr. Hare cannot prevail on an unjust enrichment theory.

Any claim of nonpayment and unjust enrichment against Mr. Pant is self-defeating because Mr. Hare admits the Law Firm and not him was entitled to payment of fees pursuant to the Litigation Agremeents. Pl.'s Resp. at 22; *see also,* FAC, fn. 12. Despite these glaring admissions, Mr. Hare once again attempts to displace the Law Firm as a party to an alleged agreement regarding attorney's fees. Pl.'s Resp. at 21. But contradictory allegations and the language of the agreements as quoted dictate that any claims for unjust enrichment are only possible against the Law Firm and have no merit against Mr. Pant.

### H. Mr. Hare cannot demonstrate legal causation or standing.

Even taking all of his allegations as true, Mr. Hare cannot show that Mr. Pant's conduct was a substantial factor in Mr. Hare not receiving payment for attorney fees. According to his allegations, "the Firm" was entitled to legal fees under the Litigation Agreements, and the Firm was contractually obligated to Hare to pay him for fees received by the Firm. FAC, ¶¶16-17; Fn. 12. Whether Mr. Hare received payment from the Law Firm, rested solely with the Law Firm and not Mr. Pant. Thus, any conduct of Mr. Pant is "too attenuated from the resulting injuries" to be a "substantial factor in bringing about" Mr. Hare's

harm. *Meador v. Apple, Inc.,* No. 6:15-cv-715, 2016 U.S. Dist. LEXIS 189185, at *9 (E.D. Tex. 2016) (citing, *HIS Cedars Treatment Center of DeSoto, Texas, Inc. v. Mason,* 143 S.W.3d 794, 799 (Tex. 2004).

Taken as true, Hare has not alleged facts sufficient to establish standing. Mr. Hare's allegations reveal that the Litigation Agreements were between the Law Firm, the Client, and the Funder – not Mr. Hare and not Mr. Pant. Hare attempts in error to rely on principles of third-party standing, even though the FAC clearly demonstrates a lack of Article III standing. Motion at 22. Regardless, third-party standing requires a (1) close relationship, (2) alignment of interests, and (3) hindrance. *Id.*, citing *ESI/Emp. Sols., L.P. v. City of Dallas,* 450 F. Supp. 3d 700, 716 (E.D. Tex. 2020). When "any of the three components [of standing] are missing, courts should dismiss the claim for lack of standing." *Id.* By Mr. Hare's own allegations as well as newly revealed arguments, he cannot show an alignment of interests. Mr. Hare was terminated from employment with the Law Firm for either perceived embezzlement or racial discrimination. Pl.'s Resp. at 6. Nor can he show hindrance. Hare speculates that the Law Firm may not have been paid by the Client. But this is at odds, with the allegation that at least some portion of fees were paid since Hare received $96,000.00 from the Law Firm as a bonus related to the underlying representation of the Client. Pl. Resp. at 5-6. Hare has neither Article III standing, nor third-party standing.

## IV.  CONCLUSION

Mr. Hare's FAC and Response do not address the multitude of defective arguments that all stem from the following fatal flaws: (1) Mr. Hare has not provided the alleged agreements; (2) Mr. Hare has no enforceable contractual rights under the portions of the alleged agreements; (3) Neither Mr. Hare nor Defendant Pant are a party to any of the alleged agreements; and (4) the Law Firm (and not Mr. Hare individually) is entitled to fees under the alleged agreement.

Date:  October 12, 2022                                Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　　　　*/s/Greg Love*
　　　　　　　　　　　　　　　　　　　　　　　　　　Greg Love
　　　　　　　　　　　　　　　　　　　　　　　　　　Texas Bar No. 24013060
　　　　　　　　　　　　　　　　　　　　　　　　　　greg@swclaw.com

>Chris J. Zhen
>California Bar No. 275575
>chris@swclaw.com
>**STECKLER WAYNE CHERRY & LOVE, PLLC**
>107 East Main Street
>Henderson, Texas 75652
>Telephone: No.: 903) 212-4444
>Facsimile No.: (903) 392-2267

*Attorneys for Defendant Sanjay Pant*

## CERTIFICATE OF SERVICE

    I hereby certify that, on  October 12, 2022, a true and correct copy of the above was electronically filed via the Court's CM/ECF system and served on counsel of record for Plaintiff.

>*/s/ Greg Love*
>Greg Love