IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| JASPAL SINGH HARE, | § § § § | |
| *Plaintiff*, | § § | |
| v. | § § | Case No. 2:22-cv-0189-JRG-RSP |
| SANJAY PANT, | § § § | |
| *Defendant*. | § § | |

## REPORT AND RECOMMENDATION

Before the Court, defendant Sanjay Pant moves to dismiss the instant suit pursuant to Federal Rule of Civil Procedure 12(b)(6). **Dkt. No. 11**. For the following reasons, it is the recommendation of the undersigned that the motion be **DENIED**.

**I. Standard of Review**

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555. The court must accept all well-pleaded facts as true, reviewing them in the light most favorable to the plaintiff. *Sanders-Burns v. City of Plano*, 594 F.3d 366, 372 (5th Cir. 2010) (citing *Piotrowski v. City of Houston*, 51 F.3d 512, 514 (5th Cir. 1995)).

When considering a motion to dismiss for failure to state a claim, a district court's analysis is generally limited by to the contents of the pleadings and attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). However, exceptions exist. For example,

documents attached to a motion to dismiss are considered a part of the pleadings if they are referred to in the plaintiff's complaint and central to the claim. *Id.* at 498-99 ("In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated.").

### II. Background

The events giving rise to the instant action, as recounted in the pleadings, relate to contracts for legal services. Plaintiff Jaspal Singh Hare is a licensed attorney specializing in patent litigation and during the relevant times was employed as counsel at Law Firm.[1] *Id.* ¶ 8. Pant, along with business partner Gautham Bodepudi, managed IP Edge, LLC, a patent monetization consulting firm. *Id.* ¶ 9. Hare and Pant have known each other for ten years through various business dealings. *Id.* ¶ 10. Around June of 2019, Pant through IP Edge represented Client[2] who sought legal assistance enforcing patent rights. *Id.* ¶¶ 11-12. Hare believed Client would be a good candidate for litigation funding and proposed using Funder.[3] *Id.* ¶ 12. Pant shared with Hare via email that Pant explained to Client Hare's willingness to present the case for funding without commitment or obligation to use Law Firm as litigation counsel or to use Funder. *Id.* & Dkt. No. 1-2 ("Exhibit 1").[4] In the same email, Pant shared with Hare Client's plan to use Law Firm as litigation counsel if Client used Funder. *Id.* Hare then obtained funding approval subject to certain terms including Hare's compensation for an hourly rate at a 25% discount and a 10% contingency fee. *Id.* ¶ 13. Client agreed to the terms, and a Funding Agreement evidencing the same was executed. *Id.* ¶ 14. Client also retained Hare through an Engagement Letter ("Hare Engagement Letter"). *Id.* ¶ 15.

---

[1] Although the name of the law firm is disclosed, the name is immaterial and the Court will exercise discretion.
[2] The parties refrain from disclosing the name of the client.
[3] The parties refrain from disclosing the name of the firm that was engaged as funder.
[4] Exhibit 1 is referred to in the first amended complaint but is not attached. In the response brief, Hare identifies the document as Exhibit 1 to the original complaint. Compare Dkt. No. 21 p 8 n 4, with Dkt. No. 1-2.

Once the agreements were finalized, Hare prepared the case for litigation and filed a complaint in August 2020. *Id.* ¶ 21. Later, Hare, Funder, Client, Pant, and others made the decision to include additional "co-lead-counsel" to assist with trial. *Id.* ¶ 24-25. Thereafter, an agreement in principle was reached with firm Co-Counsel.[5] *Id.* ¶ 25-26. Funder prepared an Amended Funding Agreement and an Engagement Letter for Co-Counsel ("Co-Counsel Engagement Letter"). *Id.* ¶ 26. The Amended Funding Agreement included a new budget for Co-Counsel and $1.2 million in discounted hourly fees for Hare's continued role through trial. *Id.* ¶ 29. The parties anticipated that Hare would manage litigation strategy and that Co-Counsel would manage district court litigation. *Id.* ¶ 28. Throughout the process, Pant and Bodepudi acted as liaison between Hare, Client, Co-Counsel, and Funder. *Id.* ¶ 29.

Hare alleges that Pant never provided Co-Counsel with the original Funding Agreement or the Hare Engagement Letter. *Id.* ¶ 32. Nonetheless, Co-Counsel signed the Amended Funding Agreement. These events caused tension regarding executory and managerial power over litigation. *Id.* ¶¶ 33-34.

In August 2021, Pant and Bodepudi informed Hare of their desire that Hare discontinue working on pending litigation and future litigation projects, to which Hare had already dedicated significant time. *Id.* ¶ 36. Hare declined to step down. *Id.* ¶ 37. Pant then informed Client, Funder, and Co-Counsel that IP Edge would no longer work with Hare. *Id.* ¶ 38. Thereafter, Client and Co-Counsel began freezing out Hare. *Id.* Hare continued his representation including a *Markman* hearing (through which Hare obtained favorable constructions for Client), depositions, witness preparation, and revision of the expert report. *Id.* ¶ 40. In November 2021, Client had another

---

[5] The parties refrain from disclosing the name of the firm that was engaged as co-counsel.

attorney appear and move to withdraw Hare as counsel of record. *Id.* ¶ 41. The suit settled in January 2022. *Id.* ¶ 42.

Hare alleges that Pant sought to eliminate the fees owed Hare, which if eliminated would revert to Client, and a portion of which would be payable to IP Edge. *Id.* ¶39. Hare was never paid for his labor. *Id.* ¶ 43.

### III. Analysis

Hare filed suit against Pant for breach of contract, fraud, intentional interference with existing contracts, wrongful interference with prospective contractual or business relations, conspiracy, and unjust enrichment. Dkt. No. 7 (first amended complaint) at ¶¶ 44-81 (Counts I-VI). Pant moves for dismissal of the claims. Dkt. No. 11.

Before the Court turns to an analysis of each challenge, it notes that Pant criticizes Hare's failure to include the agreements and letters in the complaint.[6] However, Pant also failed to include the same in its motion. See *Collins*, 224 F.3d at 498-99. Without the underlying documents, the Court is in no position to interpret them. *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, Loc. 13-423 v. Valero Servs., Inc.*, No. 1:12-CV-113, 2013 WL 588933, at *6 (E.D. Tex. Feb. 13, 2013) (Crone, J.) (discussing Texas law on contract interpretation). Therefore, the Court must view the complaint, including Hare's interpretation of the agreements, letters, and emails, in the light most favorable to Hare.

Pant moves to dismiss under Rule 12(b)(6) by challenging each cause of action, as well as causation and standing. The Court will address each.

---

[6] The only agreement or letter incorporated in the original complaint is the email between Pant and Hare designated as Exhibit 1, which is referred to in the amended complaint. Dkt. No. 1-2.

### A. Breach of Contract

Hare alleges breach of contract. Dkt. No. 7 at ¶ 44-48. Hare claims that the email from Pant to Hare and the subsequent course of dealings supports the conclusion that a valid contract existed. Dkt. No. 7 at ¶ 45; Dkt. No. 1-2. Pant disagrees and argues that the email is insufficient to show intent to be bound. Dkt. No. 11 p 10-11. Intent to be bound "sufficient to show agreement" may include "conduct by both parties which recognizes the existence of such a contract." Tex. Bus. & Com. Code Ann. § 2.204(a). Viewed in the light most favorable to Hare, the email and subsequent dealings may support the existence of a valid contract to obtain counsel from Hare through Law Firm. Indeed, the complaint's recitation of contractual provisions suggests an agreement between Law Firm and Client as opposed to between Hare and Client. See Dkt. No. 7 ¶ 14. Nonetheless, the complaint also suggests that but for Hare's relationship with Pant, Funder, and Law Firm, Client would not have entered into the agreement with Law Firm. Thus, there is a question of fact regarding contractual intent, which must be decided in Hare's favor at this stage.

Pant also argues that Hare lacks privity with Defendants as well as third party beneficiary status from the agreements. Dkt. No. 11 p 11-13. However, the complaint provides that Hare was obligated and owed obligations under the Funding Agreement and Hare Engagement Letter suggesting either privity or third party beneficiary status. In the absence of the actual contracts and viewed in the light most favorable to Hare, the complaint states a plausible claim for relief.

### B. Fraud

Hare also alleges fraud. Dkt. No. 7 at ¶¶ 49-55. Hare claims that around the time Co-Counsel was retained, Pant made material misrepresentations regarding Pant's intent to maintain the engagement with Hare. Hare relies on the budget for the Amended Funding Agreement, which accounted for Hare's role through trial or settlement and the Amended Funding Agreement, which

reaffirmed the Hare Engagement Letter. *Id.* Hare claims that Pant's approval of the amended budget falsely represented an intent that Hare continue managing the litigation campaign. Dkt. No. 21 p 9-13.

Pant first argues that a budget is a prediction and not actionable for the sum predicted. Dkt. No. 11 p 13. Hare does not rely on the budget for the sum but for Pant's intentions regarding Hare's continued role. Dkt. No. 21 p 9-13. Pant also argues that neither he nor Hare are party to the Hare Engagement Letter, the Funding Agreement, and the Amended Funding Agreement, and thus Hare could not rely on the representations of Pant regarding Client's choice of counsel. Dkt. No. 11 pp 13-14. The existence of an agreement is not a prerequisite for fraud. Further, even if the Court were to entertain Pant's arguments that the various relationships precluded Hare's reliance on representations from Pant, Hare can be directly injured by Pant's alleged misrepresentation if relied upon by Client. *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 656 (2008)) (finding that courts have consistently recognized that a plaintiff can be directly injured by a misrepresentation relied upon by a third party). In addition, Pant through IP Edge, was allegedly acting as patent broker and licensing agent for Client. Dkt. No. 7 ¶ 11. Pant is correct that rules of professional conduct prevent Hare from asking Client to surrender the right to terminate Hare. Dkt. No. 11 p 14 (citing Tex. Disp. Rules Prof. Conduct 1.02, cmt. 4). This, however, does not prevent Client from delegating to Pant the authority to select and terminate counsel on Client's behalf or to influence Client to do the same. Accordingly, Hare has sufficiently pleaded a claim of fraud by alleging that Pant knowingly or recklessly made material misrepresentations regarding Pant's desire that Hare continue to advise Client.

### C. Tortious Interference with Existing Contracts

Hare alleges Pant interfered with existing contracts. Dkt. No. 7 ¶¶ 56-63. Again, Pant argues that Hare lacks privity and beneficiary status. Dkt. No. 11 pp 14-16. Like similar arguments s*upra* III.A, Pant's argument requires interpretation and the underlying agreements and letters that are missing from the record. Viewed in the light most favorable to Hare, the complaint sufficiently alleges the existence of a contractual relationship subject to tortious interference.

### D. Tortious Interference with Prospective Contracts

Hare also alleges tortious interference with prospective contracts because Hare was in the process of preparing other patents owned by Client for litigation, including obtaining approval for funding. Dkt. No. 7 ¶¶ 64-70. Pant argues that termination of Hare by Law Firm precludes any reasonable possibility of prospective agreement. Dkt. No. 11 p 16. Pant's argument assumes that Hare would not have an actionable right under any prospective agreement for lack of privity and beneficiary status. As such it is similar to that which the Court has already rejected. *Supra* III.A. Further, there is nothing to suggests that Hare could not have continued as a solo practitioner detached from Law Firm. Viewed in the light most favorable to Hare, the complaint sufficiently alleges prospective contractual relationships subject to tortious interference.

### E. Conspiracy

Hare also alleges conspiracy with respect to the aforementioned causes of action. Dkt. No. 7 ¶¶ 71-78. Pant argues that there is no underlying tort, and therefore, conspiracy is not legally cognizable. Dkt. No. 11 p 17. However, the above analysis refutes that position.

### F. Unjust enrichment

Last but not least, Hare alleges unjust enrichment. Dkt. No. 7 ¶¶ 79-80. Pant argues that he was not a recipient of any of the services Hare rendered. Dkt. No. 11 pp 17-18. However, Hare

alleges that by eliminating cost owed to Hare, Pant achieved a cost savings that reverts to Client as profits, a percentage of which Pant received as agent. Dkt. No. 7 ¶¶ 79-80. In other words, Hare alleges that Pant was an indirect recipient of Hare's services. Pant then argues that recovery under a theory of unjust enrichment only occurs when there is no express contract covering the services furnished and relies on Hare's arguments that such a contract does exist. Dkt. No. 11 p 18. Hare alleges unjust enrichment in the alternative, Dkt. No. 7 ¶ 79, and in so doing, Hare pleads a claim for relief in the event of a finding that no contract existed.

### G. Causation

Pant also argues that Hare cannot establish legal causation because the contracts in question were between Law Firm and Client, such that Hare lacked privity and beneficiary status and that Law Firm was delegated managerial authority. Dkt. No. 11 pp 19-20. The Court has already found in Hare's favor at this stage on the issues of privity, beneficiary status, and intent to bind. *Supra* III.A.

Pant also argues that it was the Client, not Pant, who withdrew Hare as counsel. Dkt. No. 11 pp 20-21. This argument does not preclude a finding of causation. For example and as to the claim of breach of contract, there are questions of fact regarding Pant's authority as agent of Client, Pant's influence over Client in the absence of authority, and whether Client's withdrawal of Hare was independent of Pant's authority or influence. Similarly and as to the claim of fraud, courts have consistently recognized that under common-law principles, a plaintiff can be directly injured by a misrepresentation relied upon by a third party. *Bridge*, 553 U.S. 639 at 656. Here, Pant's alleged misrepresentation would have also been relied upon by Client to Hare's detriment, and Pant's role as agent of Client supports the plausibility of the alleged scenario. When viewed in the

light most favorable to Hare, the complaint sufficiently alleges activity by Pant that caused the withdrawal of Hare as counsel for and manager of Client's patent assertion campaign.

### H. Standing

Pant also argues that Hare lacks both Article III and prudential standing. The former is properly raised under Rule 12(b)(1) and the latter under Rule 12(b)(6). *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, n.2 (5th Cir. 2011). Regarding Article III, which requires a redressable injury in fact reasonably caused by the defendant, Pant argues that Hare is unable to establish injury and causation because Hare lacks privity with and beneficiary status from the agreements. Dkt. No. 11 pp 22-23. Regarding prudential standing, Pant relies on the general prohibition of asserting third party rights and similarly argues that Hare lacks privity with and beneficiary status from the agreements. *Id*. p 23. The Court, *supra* III.A, has already decided these issues in Hare's favor.

## IV.   Conclusion

For the reasons discussed above, it is **RECOMMENDED** that Pant's motion to dismiss, **Dkt. No. 11**, be **DENIED**.

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report within 14 days bars that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); see *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*). Any objection to the Report and

Recommendation must be filed in ECF under the event "Objection to Report and Recommendations [cv, respoth]" or it may not be considered by the District Judge.

**SIGNED this 7th day of March, 2023.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE